Jackson Martindell and American Institute of Management, a not-for-profit corporation, Appellees, v. Lake Shore National Bank, as Administrator with the will annexed of Wheeler Sammons, deceased, Marquis-Who's Who, Inc., a not-for-profit corporation, and Dorothy Webbe Sammons, Appellants.

Gen. No. 47,066.

First District, First Division.
October 21, 1957.
Rehearing denied November 18, 1957.
Released for publication December 5, 1957.

McBride & Baker, of Chicago (L. M. McBride, and Robert B. Gerrie, of counsel) for appellants.

Lord, Bissell & Brook, of Chicago (John S. Lord, William H. Hillier, and Charles H. Weiland, of counsel) for plaintiffs.

JUDGE ROBSON delivered the opinion of the court.

This is an appeal from a decree granting summary judgment to plaintiff Jackson Martindell for specific performance of an option to purchase 67 per cent of $425,000 of debentures and 67 per cent of 425 shares of the common stock of defendant Marquis-Who's Who, Inc., a not-for-profit corporation, hereinafter called the corporation. (The American Institute of Management, a not-for-profit corporation of which plaintiff Martindell is president and a director, is a party plaintiff to this action as a third party beneficiary under the agreement upon which this suit is predicated. It was not a party to the agreement, and, for the purpose of clarity reference to it as plaintiff will be omitted from the text of this opinion.) Defendants contend that the right of plaintiff to purchase the defendant corporation's debentures and stock was terminated by the payment and discharge of the debentures by the corporation prior to the exercise of plaintiff's option to purchase the debentures and stock, and that plaintiff's motion for a summary decree should have been denied and a summary decree entered in favor of the defendants, or, in the alternative, that a trial be had with respect to any issue of material fact. The issues were determined by the trial court upon a verified complaint, answers, replies thereto, each with exhibits attached, requests for admissions of fact and genuineness of documents and replies thereto and sworn affidavits of the parties.

The relevant facts necessary to determine the issues, based upon this record, are that Wheeler Sammons, Senior, and his wife, Dorothy W. Sammons, had for a long period of time prior to October 2, 1952, published "Who's Who in America" and similar publications. In 1951 Sammons, Senior, conducted various negotiations for the sale of the business or for financial backing which would assure the perpetuation of

their enterprise. With the data collected by Who's Who publications as a nucleus, he was interested also in establishing a public library of biographies. After negotiations with various firms and individuals he determined to enter into an agreement with plaintiff for the purpose of securing the necessary financial backing and establishing the library. On October 2, 1952, Wheeler Sammons, Senior, and defendant Dorothy W. Sammons entered into an agreement with plaintiff. The agreement refers to plaintiff as the buyer and the Sammonses as the sellers. It is a comprehensive plan by which the Sammonses could obtain the necessary financing and continue to remain active in the publishing business, receive an income from the net profits of the business, establish a biographical library, and at the same time provide for the perpetuation of the publishing business and the library in the event the sellers ceased to remain active by virtue of retirement, disability, or death. The agreement recites that plaintiff was interested in creating and maintaining the library and also in assuring the perpetuation of the project.

To carry out the purpose of the agreement, it provided for the formation of a corporation authorized to issue 425 shares of capital stock with a par value of $3 a share, to be purchased by the Sammonses. The agreement next provides for a loan from plaintiff to the Sammonses of $125,000 in cash, secured by a mortgage on the building owned by the Sammonses in which they conducted their business, and further secured by a pledge of certain debentures of the face value of $125,000 to be issued by the new corporation to the Sammonses. By a third provision the Sammonses were required to transfer the $125,000 in cash and all the capital assets of the partnership to the new corporation in return for $425,000 worth of debentures to be issued by the corporation. These debentures were sub-

ject to another provision which gave plaintiff an option to purchase up to but not in excess of 67 per cent of the original principal amount of the debentures, and to transfer and assign to him one share of stock for each $1,000 in principal amount of the debentures. The time for the exercise of the option started ten years after the issue of the debentures and continued ten years thereafter, unless Sammons, Senior, died, in which event the time was accelerated to the date his administrator or executor was appointed and continued six months thereafter. The time was further accelerated in case of his retirement. The agreement contained the following provision with reference to the exercise of the options:

"In the event that the Buyer chooses to exercise any of the options granted hereunder, he shall notify the Sellers or their personal representative or representatives, as the case may be, not less than *thirty days in advance of the date specified in said notice for the exercise of said option."* (Emphases ours.)

Pursuant to the terms of the agreement, the corporation was formed on February 20, 1953. Plaintiff loaned the $125,000 to the Sammonses, which was evidenced by their note for this amount, secured by a mortgage on the real estate occupied and used by the business and owned by the Sammonses. The Sammonses transferred the partnership assets, including the $125,000 received from plaintiff, to Who's Who, Inc. in exchange for the $425,000 of the corporation's debentures. They purchased the 425 shares of common stock of the corporation for $1,275. They pledged debentures bearing numbers one, two and three, totaling $125,000, to plaintiff. In addition, they executed the mortgage heretofore mentioned and assigned to plaintiff the lease to the corporation as security for his loan. The debentures have the following provision:

221

"The right is hereby reserved to the corporation to redeem this bond at any time by the payment of the principal hereof and the interest thereon to the date of redemption; provided, however, that if there be any bond or bonds outstanding with a lower serial number, such bond or bonds shall be redeemed first."

The pledge agreement executed and delivered to plaintiff had the following provision:

"If the pledgors shall repay the above described principal sum of One Hundred Twenty Five Thousand (125,000.00) Dollars, together with all interest due thereon, on or before the maturity thereof, then, in such event, the pledgee shall deliver back to the pledgors all of the said debenture bonds then remaining unpaid, and shall reassign said lease to the pledgors. . . ."

"In the event that any of the said debenture bonds are redeemed by the obligor corporation, the proceeds of such redemption shall be applied by the pledgee first in payment of interest due on the above described principal sum and the remainder on account of the principal balance then remaining unpaid."

Debentures bearing numbers one through three were delivered by the Sammonses to plaintiff and held by him under the terms of the pledge. The remaining seven bonds, serial numbers four through ten having a value of $300,000, were in the possession of the Sammonses. Mrs. Sammons had an undivided 80 per cent interest in the bonds bearing serial numbers four through ten. The estate of Wheeler Sammons, Sr., had the remaining twenty per cent interest in these bonds.

On February 21, 1956, Sammons, Sr., died. The letters of administration with will annexed were issued on March 5, 1956. This action concerns the events which transpired in the succeeding two days and in-

volves the construction of provisions in the initial contract, the principal note, the pledge agreement, and the debentures.

On March 5, 1956, the directors of the corporation by resolution elected to redeem the ten debenture bonds. The corporation and Mrs. Sammons had previously agreed to discharge her interest in bonds four through ten by accepting a loan from her of $240,000 in return for a demand note in that amount to be executed by the corporation. The directors then authorized that transaction. On the same date, March 5, 1956, the corporation drew a check for $185,000 on its account at The First National Bank of Chicago payable to the Lake Shore National Bank, in Chicago, for the establishment of a "Debenture Retirement Fund" account at that bank.

The corporation and the attorneys for Mrs. Sammons and the estate of Wheeler Sammons, each sent plaintiff a letter on March 5, 1956. The letter from the corporation advised plaintiff of the steps taken for the redemption of the debentures held by him as pledgee, stating that the sum for the payment of the principal due on these bonds was on deposit in a special account at the Lake Shore National Bank. The letter from the attorneys for Mrs. Sammons and her husband's estate also advised plaintiff of the steps taken for the redemption of the bonds held by him and contained the following language:

"Marquis-Who's Who, Inc. has been authorized and directed by Dorothy Webbe Sammons and by the Administrator of the Estate of Wheeler Sammons to apply the $125,000 set aside by Marquis-Who's Who, Inc. for redemption of the above described bonds in payment of the principal and interest due on the above described principal note of Dorothy Webbe Sammons and Wheeler Sammons upon the presentation of the following documents: . . ."

223

The letter then requested the surrender of the principal note and all documents held by plaintiff as collateral security for the amount due thereon. The letter advised plaintiff that interest had been prepaid on the principal note to March 27, 1956. The letter requested plaintiff to present all necessary papers to Marquis-Who's Who, Inc. on or before March 10, 1956.

On March 6, 1956, pursuant to the resolution of the preceding day to redeem the entire series of debentures, the corporation issued a six per cent demand note to Mrs. Sammons in the principal amount of $240,000 and drew a check for $60,000 on the account at the Lake Shore National Bank, payable to the Estate of Wheeler Sammons, Senior.

On March 7, 1956, plaintiff sent registered letters and telegrams to Mrs. Sammons, the administrator of the Estate of Wheeler Sammons, and to the president and secretary of the corporation, in which he stated his election to exercise his option to purchase 67 per cent of the debentures and 67 per cent of the common stock, pursuant to the agreement of October 2, 1952. The letter stated that plaintiff was prepared to execute all necessary documents to make the payments contemplated in connection with the transfer.

It is apparent from an examination of the pleadings, the exhibits, the affidavits and various other documents filed in this cause that the primary purpose of the contract of October 2, 1952, was the obtaining from plaintiff by the Sammonses of the loan of $125,000. This is further evidenced by an examination of the pledge agreement under which defendants deposited very substantial security for the loan. This sum of $125,000 was in reality the only consideration supplied by plaintiff for the agreement. The establishment of the library and the ultimate disposition of the business were secondary, dependent as far as plaintiff was concerned, on whether Sammons elected to pay

224

the loan. Only after ten years, or in case of certain contingencies, one of which was the death of Sammons, Senior, did plaintiff have the right to exercise his option to obtain control of the corporation.

The substance of plaintiff's contention rests on the premise that the debentures still in his possession, which were required to be paid first, had not been paid and discharged, and that the redemption of the entire series was therefore invalid. The availability of the debentures for purchase depends upon whether or not plaintiff's continued possession of debentures one through three could prevent the redemption by the corporation of the entire series.

The letter of March 5, 1956, by the attorneys for Dorothy W. Sammons and the estate of Wheeler Sammons, Senior, informed plaintiff that all the bonds had been redeemed and that funds set aside by deposit in the Lake Shore National Bank for the redemption of the bonds held by him would be applied to the payment of the principal note upon his surrender of the note and other documents, including the debentures held by him as security. The letter stated that the makers of the principal note were ready and willing to pay plaintiff on or before March 10, 1956, the full amount due on the note, at the place provided in the note for payment.

██ Does this letter constitute a tender of payment of the full amount due on the principal note? Williston defines tender as "an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be immediately satisfied." 6 Williston on Contracts, sec. 1808. The principal note was payable at any bank in Chicago appointed by the holder, or in the absence of such appointment, at the office of Marquis-Who's Who, Inc.

225

in the same city. No appointment was made by plaintiff so the bonds were payable at the office of Marquis-Who's Who, Inc. It is well settled that a valid tender of payment must include both an unconditional offer and an actual production of the money to be paid.

██ However, where an offer of payment is conditioned upon the surrender of collateral security, and the offer is refused, there has been a valid tender, if in any subsequent proceeding to enforce his rights the debtor is willing to pay into court the amount due on the debt. See 6 Williston on Contracts, sec. 1815; 3 Williston on Contracts, sec. 835 (supplemental notes 6 to 9); Williston, Contractual Relations Between Pledgor and Pledgee, 55 Harv. L. Rev. 713 (1942); see also 5 Corbin on Contracts, secs. 1233, 1235. In Illinois a tender may be accompanied by any conditions specified in the contract between the parties. Ortman v. Kane, 389 Ill. 613, 622 (1945); Jefferson Trust and Savings Bank v. Heller and Son, Inc., 296 Ill. App. 447, 457 (1938); Rohn v. Heidrich, 174 Ill. App. 423 (1912). In the instant case the principal note incorporated the terms and conditions of the pledge agreement which provides:

"If the pledgors shall repay the above-described principal sum of One Hundred Twenty Five Thousand ($125,000.00) Dollars, together with all interest due thereon, on or before the maturity thereof, then, in such event, the Pledgee shall deliver back to the Pledgors all of the said debenture bonds then remaining unpaid, and shall reassign said lease to the pledgors."

By these terms the surrender of the debentures was a condition concurrent with the payment of the note.

██ Where, as here, it is completely within the power of the payee to assure his receipt of payment by surrendering a portion of his collateral security prior to the actual passing of payment to him, the

226

sequence in which the documents would pass is not of any particular significance. The letter offered to plaintiff funds which the corporation, by its election to redeem the bonds, owed the makers as registered holders of the bonds. Only plaintiff, the payee, by refusing to surrender the debentures, could prevent the amount due on the principal note from being made available to him at the office of the corporation on or before March 10, 1956. The ability of the makers to complete payment depended upon a minimum of reasonable cooperation on the part of the payee and we can find no reason to require the makers of the note to have made available to plaintiff any funds other than those awaiting him in the special redemption account at the Lake Shore National Bank upon their surrender of the debentures to the corporation. It is a well-settled principle that equity will not require strict adherence to the technical rules governing pleas of tender in actions at law where the effect of such adherence will defeat the substantial ends of justice. Kennedy v. Neil, 333 Ill. 629, 634 (1929); Macy v. Brown, 326 Ill. 556, 564 (1927); Early v. Martin, 331 Ill. App. 55, 63 (1947).

██ The letter to plaintiff from Mrs. Sammons and the administrator was an offer to pay the amount due on the principal note on or before March 10, 1956. The letter from plaintiff to Mrs. Sammons and the administrator advising them of his election to exercise the option was a rejection of that offer, which rendered the offer a valid tender of payment. The legal effect of such a tender is to discharge the lien of the pledgee, revesting in the pledgor the right to possession of the pledged security. See Jones, Collateral Securities and Pledges, sec. 542 (3rd Ed. 1912); 6 Williston on Contracts, sec. 1817. In Cottrell v. Gerson, 371 Ill. 174 (1939), the Supreme Court said at p. 180:

"The primary duty of a pledgee is to return the article pledged to the pledgor immediately upon the

227

performance of the obligation for which the security was given, or on tender of such performance, and his refusal so to do amounts to a wrongful conversion."

Plaintiff was therefore estopped from denying the redemption of the debentures. Only the fact that he held debentures one through three prevented the registered holders thereof from receiving payment in accordance with the plan for redemption. Under the terms of the initial agreement of October 2, 1952, *plaintiff could not exercise his option until thirty days after giving notice to the Sammonses or their representatives of his election to do so.* His letter of March 7, 1956, giving Mrs. Sammons and the administrator notice that he elected to attempt to exercise his option made valid the tender and perfected the redemption of the bonds rendering them unavailable for purchase on that date or at any time thereafter.

■ Plaintiff argues that by defendants' election to redeem the bonds there was an unequivocal repudiation of the option given to plaintiff to purchase 67 per cent of the stock and debentures of the corporation; that it would therefore have been a vain act for plaintiff to have specified a date for performance of the contract thirty days or more after March 7. Plaintiff contends that all he had to do was to manifest his election to exercise his option and be ready, willing and able to perform.

This argument is without merit. Plaintiff's option was in effect a revocable offer which was limited as to the time within which it could be accepted and as to the means by which it could be revoked. Revocation by the defendants could only be accomplished by the payment of the debentures by way of redemption or on maturity, pursuant to the terms of the agreement. If defendants were to be required to give plaintiff notice that his option was to be terminated so that he might exercise it, then the Sammonses would have had the

228

right only to limit the time within which plaintiff could exercise his option rather than the right to terminate his option. An examination of the agreement of October 2, 1952, clearly shows that this was not the intention of the parties. There are no provisions in the agreement limiting the right of the corporation to redeem the bonds at any time or for any purpose. We conclude, therefore, that there is no merit in plaintiff's contention that the redemption was inoperative because the admitted purpose of redeeming the bonds was to terminate his option privileges. It was error for the trial court to enter a decree of specific performance in favor of plaintiff.

Defendants contend that if the court finds that a redemption was effected and there is no triable issue of fact that they are entitled to a summary judgment as a matter of law. Plaintiff agrees that under the pleadings there is no triable issue of fact. The Summary Judgment Act (Ill. Rev. Stat. 1955, chap. 110, sec. 57) under which plaintiff was granted his relief provides:

"For defendant. A defendant may, at any time, move with or without supporting affidavits for a summary judgment or decree in his favor as to all or any part of the relief sought against him."

An examination of this paragraph clearly indicates that such a motion is proper.

Defendants in their answer in the trial court prayed the court to dismiss the complaint and direct that plaintiff "be ordered to deliver to Who's Who, Inc. all the documents described in numbered paragraphs 1 to 6, both inclusive, on page 2 of Exhibit 5 to the Complaint, and coincidentally therewith, to accept from Lake Shore National Bank the sum of $124,704.86 as full payment and discharge of the principal note described in paragraph 29 of this Answer." We are of

229

the opinion that under the facts and findings we have heretofore made defendants are entitled to this relief.

The judgment of the trial court is reversed with directions to enter a decree for defendants consistent with the findings herein made.

Decree reversed and cause remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.