546 P.2d 396

**COMMERCIAL CREDIT CORPORATION,**
**a corporation, Plaintiff-Respondent,**

v.

**S & E ENTERPRISES, INC., a corporation,**
**and Earl McGill, Defendants-Appellants.**

**No. 11601.**

Supreme Court of Idaho.

Feb. 26, 1976.

Robert M. Robson, Boise, for defendants-appellants.

R. Michael Southcombe of Clemons, Cosho, Humphrey & Samuelson, Boise, for plaintiff-respondent.

DONALDSON, Justice.

S & E Enterprises, Inc. and Mr. Earl McGill are appealing from a determination by the district court that they were contractually obligated to pay respondent, Commercial Credit Corporation, the balance owing on a mobile home which had

been partially destroyed by fire on July 14, 1972. We affirm.

In October, 1964, the appellant, S & E Enterprises, and the respondent, Commercial Credit Corporation, entered into a Mobile Home Dealer Agreement which contemplated the assignment of security instruments by the appellant to the respondent. At the same time respondent accepted a personal guarantee of Mr. McGill, president of S & E Enterprises, wherein McGill guaranteed payment of all obligations owed by S & E Enterprises to the respondent. For the next six years appellant would sell their mobile homes on conditional sales contracts and then, pursuant to the Mobile Home Dealer Agreement, assign the contracts to the respondent.

In December of 1970, Dudley and Joyce Watson bought a mobile home from the appellant and, following the normal course of business, the contract was assigned that same month to respondent.

During the next fourteen months the Watsons were punctual in making their monthly payments but on March 2, 1972, the Watsons defaulted on their contract. Then on May 23, 1972, the Watsons, after abandoning their mobile home, filed a petition in bankruptcy. Respondent filed a reclamation petition in bankruptcy court and obtained the release of the mobile home from the bankruptcy court on June 26, 1972. Respondent thereafter requested appellant, S & E Enterprises, to take possession of the mobile home a number of times. This was not done, however, and on July 14, 1972, the mobile home was extensively damaged by fire.

The trial court, in its memorandum decision, found that respondent had satisfied the conditions of the Mobile Home Dealer Agreement and that appellants were there-

by obligated to pay respondents the nearly $14,000 balance owing on the mobile home.

Appellants contend that the trial court erred in its interpretation of the agreement. They argue that not only did respondent fail to repossess the home, as required by the agreement, but they also failed to make a timely demand for repurchase to appellant S & E Enterprises.

The key provision of the dealer's agreement states:

"Seller, with respect to any instruments sold to you, agrees that he will, on demand, repurchase any mobile home repossessed by you, in whatever condition and wherever located, and will pay to you, in cash, the amount owing on the instrument relating thereto and all expenses, less refund of unearned charges; provided however, unless you are prevented by law of legal proceedings from completing repossession within such time, you shall make demand for repurchase within 90 days after maturity of the earliest unpaid installment of the instrument still wholly in default."

The first question is whether respondent did "repossess" the mobile home. Appellants point to a 1946 Nebraska case in which the state supreme court find that the commonly understood meaning of "possession" is that a person has possession when he has physical control. *Boyd v. Travelers Fire Ins. Co.*, 147 Neb. 237, 22 N.W.2d 700 (1946). However, the appellants failed to note that the *Boyd* court also stated that "the generally accepted meaning [of possession] would be controlling unless, by other terms with which it is used * * * it was made to appear that the term was to be given a restricted or qualified meaning." *Boyd v. Travelers Fire Ins. Co., supra,* at 702.[1] Under the

---

1. Black's Law Dictionary (4th ed.) defines "possess" to include the following: "To occupy in person, to have in one's actual and physical control * * * to own or be entitled to." In C.J.S. "possess" is defined as: " * * * to have legal title to, to own * * *. It is only in its technical or strictly legal sense that it can be limited to mean only actual physical possession * * *.
* * *
" * * * in the absence of actual possession of * * * personalty in anyone else, the possession follows the legal title, and the holder thereof is deemed to be in constructive

terms of the agreement, once the respondent had "repossessed" the mobile home, appellants agreed, upon demand, to repurchase it "wherever" it was located. In this context, it is unlikely to assume that the parties intended the requirement of physical control by the respondent when, at the same time, appellants agreed to repurchase the home no matter where it was located.

Under the terms of this agreement, we find that the district court was correct in holding that respondent fulfilled the condition of repossession when the bankruptcy court entered an order allowing the respondents to reclaim title to the mobile home.

We now consider appellants' claim that respondent had failed to make a demand for repurchase of the mobile home to appellants within the time required by the agreement.

■ The contract does not require that the demand by in any specific form. The respondent's district manager, Robert G. Anderson, testified he made a telephoned request to appellant McGill to pick up the trailer and "pay it off." While this is disputed by Mr. McGill, he nevertheless admits that a request for repossession was made on June 26, 1972.

■ The testimony indicates it was the custom of the parties that when a mobile home was repossessed by the respondent, appellants, in order to avoid paying off the entire contract, must do one of two things, either sell the mobile home or continue making the monthly payments. Thus, it was the understanding of both parties that upon repossession of the mobile home by respondent and their request to appellants that it be retaken, that respondent no longer looked to the original purchaser for the money still owing. Rather, they looked to appellants for the balance of the contract,

and appellants recognized this obligation. The conduct of parties to a contract and their practical interpretation of it is an important factor when there is a dispute over its meaning. *Chick v. Tomlinson,* 96 Idaho 483, 531 P.2d 573 (1975); *Cottle v. Oregon Mutual Life Ins. Co.,* 60 Idaho 628, 94 P.2d 1079 (1939); *Krieg v. Union Pac. Land Resources Corp.,* 525 P.2d 48 (Or.1974); *Belmont Electric Service, Inc. v. Dohrn,* 516 P.2d 130 (Colo.1973); *Advance Press Corp. v. Chester,* 511 P.2d 932 (Colo.1973); *Schultz & Lindsay Const. Co. v. State,* 83 N.M. 534, 494 P.2d 612 (1972). We find no error with the trial court's conclusion that a sufficient demand for repurchase was made.

■ Appellant also argues that the demand made on June 26, 1972, was ineffective as it was made more than ninety days after the Watsons had defaulted. Such a claim is unfounded. While the contract does state that respondent "shall make demand for repurchase within 90 days after maturity of the earliest unpaid installment of the instrument still wholly in default" this clause is preceded by the qualification "unless you are prevented by law or legal proceedings from completing repossession within such time." Here, the Watsons defaulted on March 2, 1972, and filed a petition in bankruptcy on May 23, 1972. The mobile home was in the constructive possession of the bankruptcy court for May 23 until June 26, 1972, when the bankruptcy court entered an order allowing respondent to reclaim title to the mobile home. Thus, from May 23 through June 26, 1972, the respondent was clearly "prevented by * * * legal proceedings" from repossessing the home. The demand was timely made.

The judgment of the trial court is affirmed. Costs to respondent.

McFADDEN, SHEPARD, and BAKES, JJ., and SCOGGIN, District Judge, concur.

---

possession." 73 C.J.S. Property § 14. It is evident from the preceding examples that

no one definition of possession will suffice in all situations.