645 P.2d 344

**POLLARD OIL COMPANY,**
**Plaintiff-Respondent,**

v.

**Val CHRISTENSEN and Naomi**
**Christensen, His Wife,**
**Defendants-Appellants.**

**No. 13343.**

Supreme Court of Idaho.

May 7, 1982.

Brent J. Moss of Smith, Hancock & Moss, Rexburg, for defendants-appellants.

W. Brent Eames, Rexburg, for plaintiff-respondent.

McFADDEN, Justice.

The instant appeal arises from an action filed by Pollard Oil Company against Val and Naomi Christensen for payment of principal and accrued interest allegedly due and owing on two promissory notes executed by the Christensens. In their answer and counterclaim, the Christensens sought damages on two counts of breach of contract and treble damages on two counts of anti-trust violations. The district court entered judgment in favor of Pollard Oil Company, and declined to grant relief to the Christensens on their counterclaim. We affirm.

During the summer of 1971, Dean Pollard, as the agent for Pollard Oil Company, a corporation engaged in buying and selling petroleum products, became interested in establishing a dealership in the Teton Basin area. He was referred to Val Christensen who, along with his wife, owned property adjacent to the main street running

through Driggs, Idaho. Pollard visited the Christensens and discussed with them the possibility of locating a service station on their property.

The Christensens accepted Pollard's offer, and on June 23, 1971, the parties entered into a contract. Under this agreement, the Christensens agreed to lease their property to Pollard Oil Company, with the understanding that the Christensens would operate a self-service gasoline station to be constructed on the property. The agreement also was to serve as security for repayment of money loaned by Pollard Oil Company to the Christensens for the construction of the self service station and the purchase of necessary equipment. Contained in paragraph four of this agreement was a promissory note which stated,

"For Value Received, I, we or either os [sic] promise to pay to the order of Pollard Oil, Inc., a corporation of Rexburg, Idaho, the principal sum of Six Thousand (6,000.00) Dollars, current and lawful money of the United States of America, with interest thereon at the rate of 8½ per cent per annum, calculated upon the unpaid balances from time to time, as payments are made during the year; said payments to cover both principal and interest, and are applicable when paid, to the payment: first, of interest then accrued and unpaid, second, of unpaid principal, so as to satisfy the following scheduled specified principal installments: $400.00 to be paid on or before December 31, 1971, $1,000.00 to be paid on or before December 31, 1972, $1,000.00 to be paid on or before December 31, 1973; $1,000.00 on or before December 31, 1974; $1,000.00 on or before December 31, 1975; $1,000.00 on or before December 31, 1976; and $600.00 on or before August 1, 1977, together with accrued interest thereon."

Following the recital of the promissory note, and immediately preceding the next paragraph is the provision that "[o]ne [c]ent per gallon in addition to purchase price should be paid."

The agreement further provided that Pollard Oil Company would supply gasoline and petroleum products for resale by the Christensens. In this context, the parties stipulated to the following in paragraph five of the agreement:

"It is stipulated that the Parties of the First Part shall pay the principal and accrued interest as set forth above, by purchasing bulk gasoline and other petroleum products from the Party of the Second Part, and the equivalent of one cent per gallon of gasoline purchased shall be applied to said indebtedness in the manner as specified in the note; provided, that truck and trailer bulk deliveries made to the station at Driggs, shall be paid for as a cash transaction, and provided, further, the sale price shall be three cents below the tank wagon rate received at Rexburg, Idaho."

The agreement provided for an accounting to be made on or before the 31st of December of each year to determine "if the one cent per gallon applied to payment of said note" had satisfied the annual principal payment and accrued interest. If a deficit remained on the installment due, provision was made for payment of the deficit.

Thereafter, the parties decided that an extra building was needed. In order to pay for the construction of the building, the Christensens executed another promissory note to Pollard Oil Company in the amount of $2,084.65.

Pollard Oil Company began delivering gasoline and petroleum products to the Christensens in September of 1971. The annual amount of gasoline delivered was as follows: 32,600 gallons in 1971; 157,846 gallons in 1972; 145,700 gallons in 1973; and 16,100 gallons in 1974. Pollard Oil Company's charges for the gasoline delivered averaged only one and one-half cent per gallon below the tank wagon rate. The Christensens paid for the gasoline as it was delivered on a cash basis. Each year the parties had a settlement. Pursuant to the settlement, Pollard Oil Company charged and collected from the Christensens the accrued interest on the two promissory notes. However, the Christensens never made any payments on the principal owing on the notes,

and Pollard Oil Company never applied the equivalent of one cent per gallon of gasoline purchased to the retirement of the indebtedness. Moreover, the Christensens never paid an additional one cent per gallon on the gasoline they purchased nor did Pollard Oil Company ever request the Christensens to so act.

In 1974, the Christensens discontinued operation of the self service station. Thereafter, Pollard Oil Company filed the instant action seeking the principal of $8,084.65 and accrued interest due and owing on the two promissory notes, costs and reasonable attorney fees. Shortly after the initial complaint was filed, the Christensens offered to pay Pollard Oil Company $10,000.00 in full settlement of all claims. The offer was refused. Subsequently, the Christensens filed an answer and counterclaim. By way of the counterclaim, the Christensens sought damages for breach of contract and treble damages for unlawful monopoly and trade practices.

The district court, sitting as the trier of fact, heard the evidence and thereafter issued a memorandum opinion, containing findings of fact, finding *inter alia*,

"7. Pollard's bills to Christensen for gasoline were never three cents lower than such tank wagon rate. In fact, they averaged about one and one half cents per gallon below the tank wagon rate.

8. Christensen paid for the gasoline as it was delivered in accord with bills presented to him by Pollard. Those bills averaged about one and one half cents per gallon more than Pollard had agreed to charge, unless he included in the bill a charge to be applied to payment of the notes.

9. Pollard did not credit Christensen with any payment on the notes, but has filed this suit to collect the full amount of the notes. Pollard charged and collected from Christensen each year interest on the full amount of the notes without making any allowance for payments made.

10. The gasoline delivered to Christensen in 1971 was 32,600 gallons; in 1972: 157,846 gallons; in 1973: 145,700 gallons; in 1974: 16,100 gallons. At one and one half cents per gallon Pollard overcharged in 1971, $489.00; in 1972, $2,367.69; in 1973, $2,185.50; in 1974, $241.50. This amounts to a total overcharge of $5,283.69.

11. Under his contract with Christensen Pollard was entitled to charge one cent per gallon over the agreed rate. This amount should have been credited in each year against the principal sums named in the notes. Since Pollard actually overcharged an additional one half cent per gallon Christensen is entitled to have the whole amount credited against the amount of the notes."

Pursuant to these findings, the district court concluded that Pollard Oil Company was entitled to judgment, and entered judgment in the amount of $2,800.00 principal plus interest, $750.00 attorney fees, and one-third of the lawsuit costs. The Christensens' motion to amend the findings was denied, and from entry of judgment, they perfected the instant appeal.

At the outset, the appellants have claimed that the respondent's actions were in contravention of the Idaho Anti-trust Law (I.C. § 48–101 *et seq.*) and the Idaho Anti-Price Discrimination Act (I.C. § 48–201 *et seq.*) The district court ruled against the appellants on these claims, and we find no error in this regard. Suffice it to say that the appellants' arguments as to the legal concepts of restraint of trade and price discrimination failed to establish how the actions of the respondent come under condemnation of law. Simply stated, the appellants failed below to prove by a preponderance of the evidence that the agreement between the parties was an illegal tying arrangement or that the agreement substantially lessened competition or tended to create a monopoly in favor of the respondent.

The appellants next contend that the district court erred in not specifically finding that the respondent's failure to sell gasoline to the appellants at three cents below the tank wagon rate received at Rexburg con-

stituted a breach of the agreement between the parties, by which breach the appellants sustained damages recoverable at law.

■ It is evident from the record that the district court did not make a specific finding of fact on this issue; an issue which was raised by the pleadings. Ordinarily, where the trial court has failed to make findings of fact upon each and all of the material issues raised by the pleadings, the judgment will be reversed and the cause remanded for additional findings. *American Mining Co. v. Trask*, 28 Idaho 642, 156 P. 1136 (1915). However, this general rule of law is inapplicable when the error is harmless. *See Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972); *Nab v. Hills*, 92 Idaho 877, 452 P.2d 981 (1969).

■ A perusal of the district court's findings of fact set forth earlier in this opinion indicate that it did not characterize or denominate the findings as giving rise to a breach of contract. It is apparent that the district court considered the respondent's contention given its finding that the appellants had been overcharged 1.5 cents per gallon of gasoline purchased and its adjustment of the amount due the respondent to the extent it determined the appellants were overcharged. Under these circumstances, the district court's failure to specifically find that the respondent breached the contract by way of its overcharging the appellants cannot be said to have impaired the substantial rights of the appellants.

■ The appellants also contend that they sustained other certain damages arising from the respondent's failure to sell the gasoline at three cents below the tank wagon rate beyond the amount of the overcharge. The asserted damages said to have resulted from the overcharge were (1) loss for anticipated net profits on the sale of gasoline during the years 1974 and 1975 and (2) loss for continuing overhead during the same years. The district court concluded in its order denying the appellants' motion to amend the findings of fact that the asserted damages were too remote and speculative to be recoverable. A review of the applicable case law and record supports the district court's conclusion, and we accordingly uphold it on appeal. *Traylor v. Henkels & McCoy, Inc.*, 99 Idaho 560, 585 P.2d 970 (1978); *Olson v. Quality-Pak*, 93 Idaho 607, 469 P.2d 45 (1970); *Lockwood Graders of Idaho, Inc. v. Neibaur*, 80 Idaho 123, 326 P.2d 675 (1958).

A related issue on appeal to the foregoing is whether the district court erred in the determination of the amount to be offset against the amount due the respondent on the two promissory notes. Specifically, the appellants take exception to the district court's determination that since the appellants never paid an additional one cent per gallon on the gasoline they purchased, under the terms of the contract they were not entitled to have the equivalent of one cent per gallon of gasoline purchased applied to the retirement of their indebtedness on the notes. With respect to this determination, the appellants contend that the contractual language referred to is ambiguous; and therefore, the district court should have construed the language against the respondent since it was the party that selected the language. *See, e.g., Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975); *Dale's Service Co. v. Jones*, 96 Idaho 662, 535 P.2d 1102 (1975); *Dunford v. United of Omaha*, 95 Idaho 282, 506 P.2d 1355 (1973).

The particular contractual language being placed in issue reads as follows:

"One Cent per gallon in addition to purchase price should be paid.

5. It is stipulated that the parties of the First Part shall pay the principal and accrued interest as set forth above, by purchasing bulk gasoline and other petroleum products from the Party of the Second Part, and *the equivalent of one cent per gallon of gasoline purchased shall be applied to said indebtedness in the manner as specified in the note* ; provided that truck and trailer bulk deliveries made to the station at Driggs, shall be paid for as a cash transaction, and provided, further, the sale price shall be three cents below the

tank wagon rate received at Rexburg, Idaho."

The wording within part five of the contract indicates that one cent from the stated purchase price of three cents below the tank wagon rate was to be applied directly to retire the promissory notes. However, the phrase preceding part five of the contract, "[o]ne cent per gallon in addition to the purchase price should be paid," is at odds with this language. The phrase appears to indicate that if the appellants were to have obtained the one cent credit against the purchase price of the gasoline, they would have had to have paid an additional one cent per gallon of gasoline purchased, and the trial court so held.

■ Where terms of a contract are ambiguous, its interpretation presents a question of fact. *Pocatello Industrial Park Co. v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). In cases of doubt or uncertainty as to the meaning of a contract, this court has consistently held that the conduct of the parties to the contract and their practical interpretation of it is a factor in ascertaining their intentions. *Commercial Credit Corp. v. S & E Enterprises*, 97 Idaho 441, 546 P.2d 396 (1976); *Cottle v. Oregon Mut. Life Ins. Co.*, 60 Idaho 628, 94 P.2d 1079 (1939).

If application of this rule of construction fails to remove the doubt or uncertainty as to the meaning of the contract, the rule quite often attaches that the contractual provision(s) giving rise to the ambiguity will be construed against the party that drafted the provision(s). *See, e.g., Werry v. Phillips Petroleum Co., supra; Dale's Service Co. v. Jones, supra. See also, Phelan v. Peeters*, 260 Iowa 1359, 152 N.W.2d 601 (1967).

■ Thus, the precise issue before the court is whether the district court's interpretation of the contract that the appellants were required to pay an additional one cent per gallon of gasoline purchased in order for the one cent credit to obtain is supported by the evidence. There exists substantial, competent evidence in the record

that the parties' conduct under the contract and their practical interpretation of it supports such a construction. During the several years that the parties were in business, there was never the application of the equivalent of one cent per gallon of gasoline purchased to the retirement of the debt owed on the promissory notes, nor did the appellants ever request that such a credit be given. Moreover, during cross-examination, Val Christensen admitted that he understood the contract to mean that in order for the one cent credit to obtain he would have to pay an additional one cent on each gallon of gasoline purchased.

"Q. Do you recall that your deposition was taken on September 13, 1978, at the courthouse?

A. Yes.

Q. And I asked you a question at that time, 'What was your understanding—

THE COURT: Are you publishing the deposition?

MR. EAMES: No. I just wanted to refer to it in this particular question.

THE COURT: Okay.

Q. (By Mr. Eames) In any event, you may remember that I asked you: What was your understanding from the agreement as to how the $8,000 was to be paid and this was what you said, 'According to the agreement it was supposed to be paid with one cent a gallon from each gallon of gasoline sold.' Then I said, 'In other words, every time you purchased gasoline you were to pay one cent each gallon purchased?' 'Yes.' So, in spite of what the agreement said, was that your understanding during the time you were operating the business?

A. Yes."

■ Finally, the appellants contend that the district court erred in not finding that the respondent's refusal to accept the appellants' offer to pay the sum of $10,000.00 in full settlement of all claims constituted a breach of contract.

The purpose and object of tender is well stated in 74 Am.Jur.2d, Tender § 2, at 546 (2d ed. 1974):

"The purpose and object of tender is to enable the other party to accept the money and close the transaction and thus relieve the party making the tender from further liability on the debt or obligation. One of the effects of an unjustifiable refusal of a sufficient, bona fide tender is to place the refusing party in default, and to permit the tendering party to exercise his remedies for breach of contract; and this, it would seem, may be one of the legitimate purposes the tenderer may seek to accomplish by his tender."

Consistent with the purpose and object of tender is the view that tender has a definite, legal significance:

"A mere offer to pay does not constitute a valid tender, the law requires that the tenderer have the money present and ready, and produce and actually offer it to the other party. Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is unaccompanied by any visible manifestation of intention to make the offer good." 74 Am.Jur.2d, Tender, *supra*, § 7, at 549–550.

With these general principles of law in mind, it is apparent that there never was a valid tender in this case. The record discloses that the appellants' offer to pay the amount claimed to be due and owing was simply just that: an offer to pay. The record fails to disclose an actual, present, physical offer on the part of the appellants. The respondent's refusal to accept the offer therefore cannot be said to have placed him in default.[1]

Judgment affirmed. Costs to respondent. Request for attorney fees on appeal denied.

BAKES, C. J., and BISTLINE, DONALDSON and SHEPARD, JJ., concur.

---

1. In light of this conclusion, the appellants' contention that the respondent was precluded from seeking attorney fees below as a result of its refusal to accept the offer of settlement is without merit.