870 P.2d 677

**James R. BRINTON and Patricia J. Brinton, husband and wife, Plaintiffs–Respondents,**

**v.**

**G.W. HAIGHT and W. Dea Haight, husband and wife, K. C. Haight, a widower, and Kootenai County Title Company, Defendants–Appellants.**

**No. 20461.**

Court of Appeals of Idaho.

March 14, 1994.

Harvey Richman, Coeur d'Alene, for defendants–appellants.

D. Samuel Eismann, Coeur d'Alene, for plaintiffs-respondents.

LANSING, Judge.

This is an action brought by respondents James R. Brinton and Patricia J. Brinton to recover on a promissory note and to foreclose a deed of trust which secures the note. The makers of the note, G. W. Haight and W. Dea Haight, appeal the district court's award of attorney fees and costs and of prejudgment interest accrued after the Haights had tendered payment of the full balance owed on the note. We conclude that the tender of full payment, made approximately seven months prior to commencement of this action and twenty-six months before judgment, halted further accrual of interest on the note and precluded the assessment of costs and attorney fees against the Haights. Therefore, we remand for modification of the judgment.

## I. BACKGROUND

In 1983 the Haights purchased a parcel of real property from the Brintons. Part of the purchase price was payable in installments under terms of a promissory note in the amount of $64,500. The note was secured by a deed of trust under which Pioneer Title Co., Coeur d'Alene ("Pioneer") was trustee and the Brintons were beneficiaries. By a separate agreement, Pioneer also was designated to act as escrow holder to receive payments on the promissory note and transfer such payments to the Brintons or their assignee.

About one week prior to November 9, 1990, the Haights telephoned Pioneer and asked the amount of the payoff balance on the note. On Friday, November 9, 1990, at approximately 12:00 p.m. Mr. Haight called Pioneer again, and informed a Pioneer employee that he would be coming in to pay the note that day. Mr. Haight arrived at Pioneer at approximately 4:00 p.m. and, after being informed that the payoff amount was $53,272.80, began to write a personal check for that sum. Pioneer's escrow supervisor

informed Mr. Haight that Pioneer would not accept a personal check and required a cashier's check instead. Mr. Haight then left Pioneer's office but returned several minutes later with a cashier's check for the $53,272.80. He delivered the cashier's check to the escrow supervisor and requested delivery of a trustee's reconveyance deed. The escrow supervisor stated that she could not immediately give a reconveyance deed but that it would be ready the following business day. Finding it unsatisfactory to leave the cashier's check without receiving a reconveyance deed that would remove the encumbrance from his property, Mr. Haight then took back the check after it had been in the escrow supervisor's possession for less than ten minutes.

Over the weekend, the Haights examined the escrow statement provided by Pioneer and determined that the quoted payoff balance included both a $20.00 "payoff fee" and a $28.00 "reconveyance charge." The Haights concluded that neither the escrow agreement nor the deed of trust provided that the Haights were responsible for these charges and, therefore, they should not be required to pay them.[1]

On Tuesday, November 13,[2] Mr. Haight delivered a letter to Pioneer regarding these fees and what he considered to have been the course of conduct to that time. In this letter, Mr. Haight asserted that it was the duty of the beneficiary to furnish a deed of reconveyance under Idaho law and, therefore, he was not obligated to pay the $28.00 reconveyance fee. He further believed himself obligated to pay only one-half of any escrow fees. In his letter Mr. Haight offered to pay to Pioneer by personal check $53,233.80 (principal and interest through November 9 plus $11.00 for escrow fees) if Pioneer would agree to reconvey the premises without the payment of the $28.00 fee. The letter also stated that the

---

1. The deed of trust provided:
 Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of the Deed and said note to Trustee for cancellation and retention and *upon payment of its fees,* Trustee shall reconvey, without warranty, the property then held hereunder. (emphasis added).

The deed of trust did not specify the amount of the fee that the trustee could charge nor which party was to pay it.

2. Due to the Veterans' Day Holiday, the next business day after November 9, 1990 was Tuesday, November 13.

reconveyance need not be immediate but within the normal business practice of Pioneer and after the personal check cleared the payor bank. Mr. Haight also offered to pay the same amount by cashier's check, conditioned, however, upon simultaneous delivery of a deed of reconveyance. Apparently in response to this letter, an agent of Pioneer called Mr. Haight and discussed the matter. Although it appears that as a result of this conversation Pioneer agreed to waive the $20.00 payoff fee and $3.00 of the reconveyance fee, Pioneer insisted on receiving a $2.00 escrow fee and a $25.00 reconveyance fee before executing a reconveyance.

On November 14, 1990, Pioneer sent a letter to the Haights explaining that the amount due on the note now included additional interest accrued since November 9, 1990, at a rate of $15.639 per day, bringing the balance to $53,318.63. Pioneer advised that when it received a cashier's check for this amount plus any further accrued interest, it would deliver escrowed documents in compliance with the escrow agreement, but that Pioneer would not prepare a reconveyance deed due to the Haights' refusal to pay the reconveyance fee. The letter further stated that Pioneer was resigning as trustee and that appointment of a new trustee would be necessary in order to accomplish any reconveyance. The letter expressed Pioneer's view that it was not responsible to make arrangements to collect the reconveyance fee.

The Haights thereafter made no payments on the note, although they assert they remained at all times ready, willing and able to remit the November 9, 1990, payoff amount. More than six months after Pioneer resigned, the Brintons appointed a successor trustee.

On June 10, 1991, the Brintons filed this action seeking a judgment for the unpaid principal balance of the promissory note plus interest accrued through date of judgment, and also requesting judicial foreclosure of the deed of trust. On January 6, 1993, following a court trial, the district court awarded judgment for the full amount requested by the Brintons. The judgment included interest in the amount of approximately $12,200 that had accrued at the rate of $15.639 per day

from the Haights' tender on November 9, 1990, through the date of judgment. The district court also awarded to the Brintons costs and attorney fees totalling approximately $5,000. The Haights have paid the judgment, but also brought this appeal, asserting that the award of interest accrued after November 9, 1990, and the award of costs and attorney fees were improper.

Thus has a $17,000 conflict grown from the inability of the Haights, Pioneer and the Brintons to resolve a disagreement over a $25.00 fee and three days' interest.

The Haights acknowledge that they are liable for the principal and interest accrued through November 9, 1990. However, they maintain that when they offered to pay the full balance on November 9, 1990, they properly tendered the amount due and that such tender stopped the accrual of interest after that date. The Brintons respond that the Haights unreasonably conditioned their tender upon immediate receipt of a deed of reconveyance and that they withdrew the tender when Pioneer could not immediately comply.

The district court, ruling in favor of the Brintons, found that the Haights had placed an unreasonable condition upon their tender and that Pioneer was never placed in effective control of the funds. The court concluded that proper tender was never made and the Haights consequently were not excused from payment of interest accruing after November 9, 1990.

On appeal, our inquiry is three-fold. First, was an adequate tender physically made by the Haights? Second, was the condition imposed by the Haights—contemporaneous delivery of a deed of reconveyance—one upon which they could rightfully condition their tender? And third, if a valid tender was made on November 9, 1990, was it subsequently kept good?

## II. STANDARD OF REVIEW

██ Where a trial court sits without jury as the trier of fact, it must render findings of fact and conclusions of law. I.R.C.P. 52(a). The district court's findings of fact will not be disturbed on appeal unless

clearly erroneous. *Rueth v. State,* 103 Idaho 74, 77, 644 P.2d 1333, 1336 (1982); *Viehweg v. Thompson,* 103 Idaho 265, 271, 647 P.2d 311, 317 (Ct.App.1982). We freely review the trial court's application of law to the facts found. *Hilt v. Draper,* 122 Idaho 612, 616, 836 P.2d 558, 562 (Ct.App.1992).

### III. ANALYSIS

#### A. PHYSICAL TENDER

■ We begin with recognition that if the Haights made a proper tender of full payment on November 9 and kept the tender good, that tender discharged them from liability for interest accrued thereafter. Under common law, proper tender of the full amount of a debt, including then-accrued interest, terminates the running of contractual interest. *McClellan v. Davis,* 45 Idaho 541, 550, 263 P. 1002, 1005 (1928); *Machold v. Farnan,* 20 Idaho 80, 89, 92, 117 P. 408, 411, 412 (1911); OSBORNE, NELSON & WHITMAN, REAL ESTATE FINANCE LAW, § 6.5 at 385–386 (1979). RICHARD A. LORD, 1 WILLISTON ON CONTRACTS § 21–12 (4th ed. 1990).

The common law principle has been statutorily adopted in this state. Article 3 of the Uniform Commercial Code, as adopted in Idaho and as it existed in 1990 when the Haights made their offer to pay, provided that, "Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs, and attorney's fees." I.C. § 28–3–604(1) (1980) (amended 1993, current version at I.C. § 28–3–603 (1993 Supp.)).

Therefore, the threshold issue in this case is whether the Haights made a proper "tender." Our Supreme Court has defined "tender" as:

> [T]he unconditional offer of a debtor to the creditor of the amount of his debt. This means the real amount of the debt as fixed

by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due,— actually due.

*Dohrman v. Tomlinson,* 88 Idaho 313, 318, 399 P.2d 255, 258 (1965) *quoting Kelley v. Clark,* 23 Idaho 1, 12, 129 P. 921, 924 (1912). *See also Wooten v. Dahlquist,* 42 Idaho 121, 127, 244 P. 407, 409 (1926).

In *Pollard Oil Company v. Christensen,* 103 Idaho 110, 645 P.2d 344 (1982), our Supreme Court further explained that the offer to pay must be accompanied by a manifest present ability to pay.

> Tender implies the physical act of offering the money or thing to be tendered, but this cannot rest in implication alone. The law requires an actual, present, physical offer; it is not satisfied by a mere spoken offer to pay, which, although indicative of present possession of the money and intention to produce it, is unaccompanied by any visible manifestation of intention to make the offer good.

*Id.* at 116, 645 P.2d at 350.[3]

A treatise writer defines tender as "an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be immediately satisfied." WALTER H.E. JAEGER, 15 WILLISTON ON CONTRACTS § 1808 at 418 (3d ed. 1972).

■ Here the Haights offered on November 9 to pay the full amount of the debt plus, unbeknownst to the Haights, a sum covering the subsequently disputed reconveyance fee. They demonstrated the present ability and

---

**3.** We note that Idaho Code § 9–1501 provides an alternative method of tender:

> An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property, is, if not accepted, equivalent to the actual production and tender of the money, instrument or property.

Therefore, a written offer to pay, without demonstration of the present possession of the money may constitute an effective tender if the written offer is rejected by the tenderee.

intent to effectuate payment by presenting a cashier's check to Pioneer. Therefore, under the foregoing criteria, the Haights made an adequate physical tender of full satisfaction of the debt on November 9.

### B. CONDITION IMPOSED ON THE TENDER

The Haights' tender would be sufficient to preclude further accrual of interest unless the tender was invalidated by the Haights' express condition that the deed of trust be contemporaneously reconveyed. Accordingly, we must next determine how that condition affected the validity of the tender.

■ Although as a general matter a tender must be unconditioned, a party may attach as a condition that upon which he or she has a right to insist. *Woods v. Dixon,* 193 Or. 681, 240 P.2d 520 (1952); *Jaynes v. Heron,* 46 N.M. 431, 130 P.2d 29, 33–34 (1942); *Lowe v. Harmon,* 167 Or. 128, 115 P.2d 297 (1941). Thus, where the parties' performances under a contract are due simultaneously, a tender may be accompanied by a demand for performance. 5 WALTER H.E. JAEGER, WILLISTON ON CONTRACTS § 666A (3d ed. 1961); RESTATEMENT (SECOND) OF CONTRACTS § 238, cmt. b, § 234 cmt. c, illus. 6 (1979). However, if the condition is improper, the tender is ineffective and the tenderee need not accept. 74 Am.Jur.2d *Tender* § 24 (1974).

■ In the instant case, the district court found that upon being informed that he could not receive a deed of reconveyance on November 9, 1990, Mr. Haight requested the return of his cashier's check. The only testimony relating to the request for reconveyance by Mr. Haight on November 9, 1990, was that of Mr. Haight himself. He testified that after giving the check to the escrow supervisor, he inquired about a reconveyance and, upon being told that one would not be available because there was no one presently in the office with authority to sign, he stated:

Well, if you're not prepared to give me my deed, I believe I'm entitled to the deed, and if you're not prepared to give it to me, then I want to take my check back. And when you call and tell me that the deed is ready, I will come down here and I will give you the check in exchange for my deed of reconveyance.

This testimony indicates that the condition imposed by Haight on his tender was one of contemporaneous exchange of the cashier's check for the deed of reconveyance. He did not withdraw the tender upon learning that he would not receive the reconveyance immediately but, rather, made clear that he would release the check as soon as the reconveyance could be delivered in exchange. This intent was confirmed by Mr. Haight's November 13 letter where he stated that he remained ready to deliver payment of principal, interest through November 9, and the undisputed escrow fees in exchange for a reconveyance deed. Therefore, we must determine whether, by conditioning his tender upon simultaneous delivery of a reconveyance deed, Haight caused the tender to be ineffective to terminate the accrual of interest on the debt.

We note first that the Haights were indisputably entitled to a deed of reconveyance upon satisfaction of the note secured by the deed of trust. I.C. § 45–1514 specifies:

> Upon performance of the obligation secured by the deed of trust, the trustee upon written request of the beneficiary shall reconvey the estate of real property described in the deed of trust to the grantor; providing that in the event of such performance and the refusal of any beneficiary to so request or the trustee to so reconvey, as above provided, such beneficiary or trustee shall be liable as provided by law in the case of refusal to execute a discharge or satisfaction of a mortgage on real property.[4]

---

4. The referenced law governing liability "in the case of refusal to execute a discharge or satisfaction of a mortgage" is I.C. § 45–915. That section provides that when a mortgage has been satisfied and the mortgage-holder does not "immediately upon demand" execute a certificate of discharge of the mortgage debt or record a satisfaction of the mortgage, the holder may be liable for all damages which the mortgagor sustains by reason of such refusal, and shall also forfeit the sum of $100.

This statute establishes a duty on the part of a trustee to reconvey the deeded premises upon satisfaction of the underlying obligation and receipt of a written authorization for reconveyance. From the outset of the escrow, Pioneer held a written authorization from the Brintons to reconvey the property upon full payment of the note. Therefore, there can be no question as to the Haights' entitlement to a reconveyance upon payment of the note balance. There remains a question as to whether they could rightfully insist upon a *contemporaneous* exchange of their payment and the reconveyance deed, or whether the Haights were required to first make the payment and then wait to receive the deed sometime thereafter.

In *Harding v. Home Investment Savings Co.*, 49 Idaho 64, 286 P. 920 (1931), our Supreme Court held that a mortgagor could properly condition a tender of the payoff amount upon the simultaneous delivery of a release of the mortgages, and that a tender that was so conditioned was effective to preclude foreclosure. *See also* OSBORNE, NELSON & WHITMAN, *supra*, § 6.4 at 385 & n. 65. (*citing Harding* for proposition that a tender conditioned upon execution of a mortgage release is a proper tender).

Decisions from other jurisdictions are in accord. *See Lanier v. Romm*, 131 Ga.App. 531, 206 S.E.2d 588 (1974) (tender of payment conditioned upon release of "mortgage deed" was proper); *City and County of Honolulu v. Kam*, 48 Haw. 349, 402 P.2d 683, 689 (1965) (city could have conditioned payment upon giving of deed); *Martindell v. Lake Shore National Bank*, 15 Ill.App.2d 217, 145 N.E.2d 784 (1957) (letter informing creditor that monies had been deposited with a bank in full satisfaction of the debt and would be released when creditor produced pledged debentures constituted full tender even though conditioned upon release of the collateral); *Macy v. Brown*, 326 Ill. 556, 158 N.E. 216, 219 (1927) (conditional tender proper where contract specified that obligation to deliver warranty deed was concurrent with obli-

gation to pay); *Wallowa Lake Amusement Co. v. Hamilton*, 70 Or. 433, 142 P. 321, 323–325 (1914) (tender of payment on mortgage valid though conditioned upon release of mortgage documents).

This rule that tender of payment may be conditioned upon contemporaneous release of security for the debt is merely an application of the general rule that:

> Where all or part of the performances to be exchanged under an exchange of promises are due simultaneously, it is a condition of each party's duties to render such performance that the other party either render or, with manifested present ability to do so, offer performance of his part of the simultaneous exchange.

RESTATEMENT (SECOND) of CONTRACTS § 238 at 223 (1979); *see also* LORD, 1 WILLISTON ON CONTRACTS § 11–21 at 407 (4th ed. 1990). On the subject of concurrent conditions, it is stated in JAEGER, 5 WILLISTON ON CONTRACTS § 666A (3d ed. 1961):

> If two persons are bound to give concurrently, one a book and the other the price, neither party will be liable until performance has either been made or tendered by the other. But though the tender may be absolute, it need be only conditional, that is, subject to receiving concurrent performance from the other side.

■ Accordingly, we conclude that a grantor of a deed of trust may condition a tender of full payment upon the contemporaneous delivery of a deed of reconveyance, and that such condition does not vitiate the tender's effectiveness to terminate the accrual of interest.[5]

The tenderer is not required to relinquish physical possession of the monies tendered without such a contemporaneous return of the collateral. If the law were otherwise, the right to make the tender conditional would be annulled. Therefore, the district court's focus on the fact that Pioneer only had the

---

**5.** We imply no opinion regarding what would constitute a reasonable time within which a trustee could deliver a reconveyance deed without incurring liability under I.C. § 45–1514. The import of our decision is that when a tender

properly conditioned on delivery of a reconveyance deed has been made, no further interest accrues on the debt, regardless of the length of time that the trustee may take to deliver the reconveyance.

check in its possession for approximately ten minutes and that Pioneer's internal policy required that payments be posted and numerous procedures followed before reconveyance would occur is incorrect for, absent a reconveyance deed, Mr. Haight was not obligated to release the check to Pioneer at all. To the extent that the district court relied upon language in our decision in Federal Land Bank of Spokane v. Parsons, 116 Idaho 545, 550, 777 P.2d 1218, 1223 (Ct.App.1989), indicating that the debtor must place tendered money "in the control of the creditor," the reliance is misplaced. That case did not involve a conditional tender or any claimed right of the payor to receive a contemporaneous performance from the creditor in exchange for the payment. Moreover, a conditional tender is essentially placed "in the control of" the payee when all that is required to obtain physical release of the payment is the payee's volitional act of performing its own concurrent obligation.

### C. HAIGHTS' REFUSAL TO PAY THE RECONVEYANCE FEE

Finally, we address the Brintons' argument that even if a valid tender was made on Friday November 9, 1990, the Haights withdrew the tender without allowing Pioneer a reasonable time to accept it, and thereafter, in their dispute with Pioneer over the much-contested reconveyance fee, the Haights never renewed the tender.

■ In order to stop the running of interest, a tender must not only be valid at its inception, but must thereafter be kept good. McClellan v. Davis, 45 Idaho at 550, 263 P. at 1005; Machold v. Farnan, 20 Idaho at 89–90, 117 P. at 411–12. Keeping a tender good requires a manifestation of the ability and readiness to pay if the tender is later accepted. Under Idaho law a tender may be kept good by keeping the tendered money on deposit in a bank, by paying it into court or by making the tender in writing. Darrar v. Joseph, 91 Idaho 210, 213–14, 419 P.2d 211, 214–15 (1966); Machold v. Farnan, supra; I.C. § 9–1501.

■ On this point the evidence establishes that at all times following the November 9, 1990, tender, the Haights were willing and able to deliver payment of the principal and interest accrued through that date. The uncontroverted evidence indicates that Mr. Haight told Pioneer's escrow supervisor that he would deliver the cashier's check whenever the reconveyance deed would be ready. His November 13 letter reiterated this tender as to principal and interest and certain fees, but withdrew the tender as to the disputed $25.00 reconveyance fee. This letter was sufficient to keep good the Haights' November 9 tender as to principal, interest and undisputed escrow fees, but the tender was not kept good with respect to the reconveyance fee. Therefore, the question presented is whether a tender conditioned upon reconveyance of a deed of trust must include payment of administrative fees collateral to the secured debt. If so, the Haights' tender was not kept good in its entirety and consequently, would not prevent further accrual of interest.

We find the answer to this question in I.C. § 45–1514 which specifies that upon satisfaction of the secured debt and receipt of a written request from the beneficiary, the trustee "shall reconvey the estate of real property described in the deed of trust to the grantor. . . ." The statute further provides that the trustee will be liable for a refusal to so reconvey. Nothing in the statute authorizes the trustee to withhold the deed until the trustee's fees are paid. Therefore, the Haights were not required to tender payment of Pioneer's reconveyance fee in order to become entitled to a deed of reconveyance.

We draw support for this conclusion from Head v. Crone, 76 Idaho 196, 279 P.2d 1064 (1955). Our Supreme Court there held that fees for preparing and recording a chattel mortgage need not be tendered to the mortgagee in order to trigger the mortgagee's duty to execute a release pursuant to I.C. § 45–915. The Supreme Court stated:

> I.C. § 45–915 requires that when a mortgage has been satisfied, the holder thereof must immediately, on demand of the mortgagor, either execute, acknowledge and deliver a certificate of discharge thereof so as to entitle it to be recorded, or enter, or cause to be entered satisfaction thereof of

record. *No provision is contained in such section of the statute requiring a tender of expenses or fees by mortgagor to mortgagee as a condition precedent to the latter's execution and delivery of a satisfaction of the mortgage or entering a release of record.*

*Id.* at 201–202, 279 P.2d at 1069–70 (emphasis added).

Although the statute applicable here, I.C. § 45–1514, is not the one construed in *Head,* we find the holding in *Head* apposite because Section 45–1514 is identical in purpose to Section 45–915 in that both mandate that the encumbrance "shall" be released upon satisfaction of the obligation and both impose liability for the mortgagee's or trustee's refusal to comply. *See Hector Inc. v. United Savings & Loan Ass'n,* 741 P.2d 542, 545 (Utah 1987) (mortgage release statute and deed of trust reconveyance statute are in *pari materia*).

 We should not be understood as holding that a trustee under a deed of trust is not entitled to payment of fees for its services.[6] We hold only that a debtor's right to a deed of reconveyance is not contingent upon payment of a trustee's fee which is not part of the debt secured by the deed of trust.[7] Accordingly, a tender of full payment of the debt, conditioned on delivery of a reconveyance deed, need not include a tender of the trustee's fee in order to be effective to halt further accumulation of interest. It follows that the Haights' letter of November 13 kept their tender good notwithstanding that the offer in the letter excluded payment of the reconveyance fee.

### D. ATTORNEY FEES AND COSTS

 The Haights have also challenged the district court's award of costs and attorney fees to the Brintons. That award was erroneous. The Haights' tender of full payment, which was kept good, not only precluded accrual of further interest on the debt but also insulated the Haights from liability for costs and fees in a subsequent collection action. I.C. § 28–3–604 (1980) (amended 1993, current version at I.C. § 28–3–603 (1993 Supp.)); *McClellan v. Davis,* 45 Idaho at 550, 263 P. at 1005; *Boise Lumber Co. v. Independent School District of Boise City, Idaho,* 36 Idaho 778, 214 P. 143 (1923).

The Brintons characterize themselves as innocent victims of an unreasonable dispute between the Haights and Pioneer. However, while this dispute began with what may be viewed as a petty conflict between the Haights and Pioneer, the Brintons could have at any time obtained payment of all that was due them by dropping their demand for interest after November 9, 1990 and by paying the contested trustee's fee themselves or by appointing a substitute trustee who would execute the reconveyance deed without charge.

### IV. CONCLUSION

A tender of payment sufficient to stop the running of interest was made by the Haights on Friday, November 9, 1990. The condition imposed by the Haights that Pioneer execute a deed of reconveyance simultaneously with delivery of the check did not vitiate the tender. The Haights' subsequent refusal to pay to Pioneer's charges for reconveyance did not act as a withdrawal of the tender made on November 9, 1990.

This case is remanded with instructions to the district court to modify the judgment by deleting the award of prejudgment interest accrued after November 9, 1990, and the award of attorney fees and costs. The judgment as so modified is affirmed. Costs on appeal to appellants.

WALTERS, C.J., and PERRY, J., concur.

---

6. We also imply no opinion as to whether Pioneer bears liability to either party to this action. Pioneer is not a party to this litigation, and that issue is not before us.

7. To the extent that this holding impairs the ability of trustees to collect fees, their remedy lies with the legislature. Many other states' statutes similar to I.C. § 45–1514 include provisions for collection of trustees' fees on reconveyance. *E.g.* Cal.Civ.Code § 2941(e) (West 1991); Nev.Rev. Stat. § 107.077(7) (1993); Or.Rev.Stat. § 86.140 (1993).