# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 34623

INDIAN SPRINGS LLC, Assignee of D.M. &
SHIRLEY THORNHILL, husband and wife,
and an Assignee of INDIAN SPRINGS
NATATORIUM, INC., an Idaho corporation,

     Plaintiffs-Respondents,

v.

INDIAN SPRINGS LAND INVESTMENT,
LLC; RON BITTON; PROFESSIONAL
ESCROW SERVICES; THE EVERETT &
ARDIS MC KINNEY REVOCABLE TRUST
U/I/D SEPTEMBER 25, 1998; AICO
RECREATIONAL PROPERTIES, LLC;
RECREATIONAL PROPERTIES A&B, a
partnership; JOHN K. BAKER & JULIE
BAKER, husband and wife, EVERETT W.
MC KINNEY & ARDIS E. MC KINNEY,
husband and wife, TODD W. ANDERSEN
and PENNY L. ANDERSEN, husband and
wife, TERRY W. ANDERSEN and
ROSANNA ANDERSEN Trustees of the
TERRY W. ANDERSEN and ROSANNA
ANDERSEN LIVING REVOCABLE TRUST
dated February 1, 2001; GLEN C.
MAHONEY and JANE DOE MAHONEY,
husband and wife, JOHN DOES and JANE
DOES 1-10,

     Defendants,

and

TERRY W. ANDERSEN and ROSANNA
ANDERSEN, husband and wife,

     Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2009 Term

2009 Opinion No. 101

Filed: July 21, 2009

Stephen W. Kenyon, Clerk

1

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Power County.  Hon. Ronald E. Bush, District Judge.

The district court orders are affirmed.

Terry and Rosanna Andersen, Pocatello, pro se appellants argued.

Racine, Olson, Nye & Budge, & Bailey, Pocatello, for respondents.  Scott J. Smith argued.

––––––––––––––––––––––––––

BURDICK, Justice

This appeal arises from an action filed by Respondent Indian Springs, LLC against various defendants to foreclose a real estate mortgage on the property known as Indian Springs Natatorium, and to collect on the promissory note secured by the mortgage.  Appellants Terry and Rosanna Andersen, acting *pro se* on behalf of themselves, individually; Recreational Properties A&B, LLC; Recreational Properties A&B, a partnership; the Terry W. Andersen and Rosanna Andersen Living Revocable Trust; and the Andersen Living Trust, appeal from the district court's award of summary judgment in favor of Indian Springs.  The Andersens also appeal from the district court's denial of their post-summary judgment motions.  We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 2, 1996, D.M. and Shirley Thornhill (the Thornhills) entered into an agreement to sell the real property known as Indian Springs Natatorium to Terry and Rosanna Andersen (the Andersens) and John and Julie Baker (the Bakers), d/b/a Recreational Properties A&B, a partnership, (hereafter A&B Partnership) for a sum of $750,000.  The buyers made a down payment of $100,000 on the property, and Terry Andersen and John Baker, d/b/a A&B Partnership, signed a promissory note as security for repayment of the remaining $650,000.  This note was later guaranteed by Terry Andersen as Trustee of the Andersen Living Revocable Trust.  Although the note was not interest-bearing, it provided that in the event of default the entire unpaid balance would accrue interest at 12% per annum.  The note also provided for a late charge of 5% of the amount of each delinquent payment.  That same day, the buyers signed a real estate mortgage on the property to secure the note, which was later recorded in Power County.  The mortgagors were listed as "Terry W. Andersen, Trustee of Andersen Living Trust, and John K. Baker and Julie A. Baker, husband and wife."  At closing, the property was deeded to Terry W. Andersen, as trustee of the Andersen Living Trust, and the Bakers.  Indian Springs claims the

buyers requested that the property be deeded this way.  However, the Andersens argue that A&B was erroneously omitted from the deeds.[1]  The Andersens claim they were never sent a copy of the deeds and, therefore, were not aware of the omission until later.

On January 23, 1998, the Bakers transferred their interest in the property by warranty deed to AICO Recreational Properties, LLC (AICO).[2]  Terry Andersen is the manager of AICO.  On February 24, 1998, Terry Andersen, acting as trustee,[3] also transferred his interest in the property by quitclaim deed to AICO.  Both transfers were recorded in Power County.  Despite transferring their interests in the property, the Andersens and the Bakers were still obligated to pay the remaining balance on the property under the terms of the promissory note and real estate mortgage.

Upon learning of these transactions, the Thornhills sent Terry Andersen a notice of default for his attempted transfer of ownership interest in the property to AICO.  Pursuant to the terms of the sales agreement, the buyers were required to obtain written permission from the Thornhills prior to selling any portion of the premises.[4]  The Thornhills later discovered that AICO had already mortgaged the property to a third party.  The pertinent facts are as follows.  On or about September 30, 1997, Todd Andersen, d/b/a AICO, and the Andersen Living Revocable Trust borrowed $149,720.69 from Everett and Ardis McKinney (the McKinneys), and gave the McKinneys a real estate mortgage on the property to secure the debt.  This mortgage was recorded in Power County on January 26, 1998.  Shortly thereafter, the same parties borrowed an additional $40,000 from the McKinneys and recorded a second mortgage on the property in Power County on April 1, 1998.  In 2000, the McKinneys began making payments toward the Andersens' note and mortgage with the Thornhills.  However, Todd Andersen, d/b/a AICO, and the Andersen Living Revocable Trust later defaulted on their payments to the McKinneys, and on March 6, 2001, a Decree of Foreclosure and Order of Sale was entered against them.  Shortly thereafter on March 29, 2001, AICO filed for Chapter 11 bankruptcy,

---

[1] The property was deeded by warranty deed and by corporate warranty deed.

[2] In 1996, AICO was formed in Colorado as a limited liability company.  Later that year, Terry Andersen registered AICO in Idaho as a foreign limited liability company.  Terry Andersen is the manager of AICO Idaho.  The Andersens claim that AICO Colorado later joined its interests with other investors to form Recreational Properties A&B, LLC and was subsequently dissolved.

[3] Terry Andersen signed the quitclaim deed as "trustee," but did not specify which trust he represented.

[4] This restriction on sale was not included in the mortgage.  We are not called upon to determine whether the provisions of the sales agreement continued to be in effect upon exchange of the deed and mortgage and express no opinion on the matter.

which was converted to a Chapter 7 bankruptcy. The Bankruptcy Court later ordered that AICO abandon its interest in the real property.

The McKinneys made regularly scheduled payments toward the Andersens' note and mortgage until March 2003, but thereafter, payments were sporadic. On February 24, 2005, the Thornhills demanded that all sums due under the note and mortgage were payable in full. However, payment was never received.[5] The Thornhills subsequently assigned their interests in the note and the mortgage to Respondent Indian Springs, LLC (Indian Springs) on September 27, 2005. The assignment was recorded in Power County. On October 21, 2005, Indian Springs filed a complaint against various defendants to collect on the promissory note and to foreclose on the mortgage. Only the Andersens, individually; A&B Partnership; the Terry W. Andersen and Rosanna Andersen Living Revocable Trust; and the Andersen Living Trust responded to the complaint through counsel. On February 10, 2006, the district court entered default judgment against all defendants who had not answered.

On October 20, 2006, Indian Springs moved for summary judgment. The Andersens' counsel filed a motion in opposition on behalf of A&B Partnership and the Andersen Living Revocable Trust. On June 28, 2007, the district court granted Indian Springs's motion for summary judgment. In its order, the district court quieted title to the property in Indian Springs and awarded damages against A&B Partnership; Terry Andersen as trustee of the Andersen Living Revocable Trust; and the Andersens and the Bakers, in their individual capacities, for $270,637.50 plus interest, along with tax payments of $20,582.46.

On July 26, 2007, the Andersens, acting *pro se*, filed a Motion for Reconsideration, Joining of Indispensible Parties, and New Trial. The Andersens requested that the district court reconsider its award of summary judgment; join at least nine other indispensible parties, including Recreational Properties A&B, LLC (A&B LLC); and permit the Andersens to amend the pleadings to add a counterclaim for damages against D.M. Thornhill and Indian Springs in the amount of $870,000. After the Andersens filed this motion, their attorney requested leave to withdraw. The district court granted his request on August 9, 2007. Then on September 19, 2007, the district court denied the Andersens' motion for reconsideration.

---

[5] The demand letter was addressed to Terry Andersen, as manager of AICO.

On September 20, 2007, the Andersens filed a Motion to Dismiss Non-Defaulting Parties. A hearing on the motion was held on November 9, 2007, at which time the district court denied their motion. Then on November 19, 2007, the Andersens filed a Motion for Title Clarification, Rescission of Deeds, and Dismissal of Case. The district court also denied this motion at hearing. The Andersens now appeal from the district court's award of summary judgment in favor of Indian Springs and the court's denial of their post-summary judgment motions.

## II. ANALYSIS

On appeal, the Andersens argue the district court erred in granting summary judgment because genuine issues of material fact remain as to title and damages. The Andersens also argue the district court erred by denying their post-summary judgment motions, including their Motion for Reconsideration, Joining of Indispensible Parties, and New Trial; Motion to Dismiss Non-Defaulting Parties; and Motion for Title Clarification, Rescission of Deeds, and Dismissal of Case.

Indian Springs, however, argues this appeal should be dismissed as to all claims made on behalf of the limited liability company, the partnership, and the two trusts because the Andersens are prohibited from representing the business entities and the trusts in a *pro se* capacity. In addition, Indian Springs contends that we should dismiss all claims the Andersens make as to their individual ownership interest in the property because they did not preserve the issue for appeal. Indian Springs also argues the Andersens, in their individual capacities, do not have standing on appeal to contest the district court's denial of their motion for reconsideration because they failed to object to Indian Springs's motion for summary judgment before summary judgment was entered. Finally, Indian Springs argues the district court properly granted summary judgment and properly denied the Andersens' post-summary judgment motions. We will begin by addressing Indian Springs's arguments as to why certain claims should be dismissed, and then we will address the Andersens' remaining claims on appeal.

5

**A. The Andersens may not represent A&B Partnership, A&B LLC, the Terry W. Andersen and Rosanna Andersen Living Revocable Trust, or the Andersen Living Trust in a *pro se* capacity.**

    1. <u>The Andersens are prohibited from representing A&B Partnership and A&B LLC in a *pro se* capacity under Idaho law.</u>

For the first time on appeal, Indian Springs argues the Andersens are prohibited from representing A&B Partnership or A&B LLC in a *pro se* capacity. Indian Springs asserts that the Andersens' representation of these business entities constitutes the unauthorized practice of law. Generally, we will not consider issues raised for the first time on appeal. However, the Andersens did not represent the partnership or the limited liability company until this appeal;[6] accordingly, this is Indian Springs's first opportunity to raise the issue. Therefore, we will consider Indian Springs's argument.

Idaho Code § 3-104 sets forth that no person shall practice law in the State of Idaho without first having been admitted to practice by the Idaho Supreme Court. In order to protect the public against the unauthorized practice of law, the Idaho Legislature has provided laws and provisions under Title 3, Chapter 4 of the Idaho Code governing the granting of the privilege to practice law and its subsequent use, control, and regulation. I.C. § 3-401 *et seq*. The Board of Commissioners of the Idaho State Bar (Board) was formed to carry out the provisions of the Act. I.C. § 3-402. The Board is responsible for investigating and making recommendations upon any matter relating to the practice of law per request of the governor, the Idaho Supreme Court, or the legislature. I.C. § 3-418.

Although Indian Springs argues there is no Idaho case law on point, this Court has previously held that a *pro se* appellant may not represent a business entity. The issue was first raised in *White v. Idaho Forest Indus.*, 98 Idaho 784, 572 P.2d 887 (1977). In that case, White, an unemployment compensation claimant, appealed from an Industrial Commission order denying him benefits. 98 Idaho at 785, 572 P.2d at 888. Throughout the course of the

---

[6] The Andersens did not act *pro se* until after summary judgment was entered. Before that time, A&B Partnership was represented by counsel, and A&B LLC was never a party to the action. Furthermore, the Andersens' post-summary judgment motions were not filed on behalf of the partnership or the limited liability company. The motion for reconsideration was filed on behalf of "Terry and Rosanna Andersen, Pro Se"; the motion to dismiss non-defaulting parties was filed on behalf of "Terry and Rosanna Andersen, defendants in the above captioned action"; and the motion for title clarification, rescission of the deeds, and dismissal of the case was filed on behalf of "Rosanna Andersen, pro se."

proceedings, Idaho Forest Industries was represented by the Gibbons Company. *Id.* at 788, 572 P.2d at 891. The Gibbons Company prepared and signed pleadings, introduced evidence, and examined witnesses. *Id.* During oral argument, it was brought to the Court's attention that the employee who had performed these legal tasks for the Gibbons Company was not a licensed attorney. *Id.* The Court determined that if this was true, there may be a violation of I.C. § 3-410 and its prohibition against the unlicensed practice of law. *Id.* The Court noted it was irrelevant that the practice was before an administrative body instead of a judicial body because the rules against the unauthorized practice of law apply equally to both. *Id.* Accordingly, the Court directed the Board to conduct a complete investigation into the matter. *Id.*

The Board released its findings in a letter addressed to the Idaho Industrial Commission dated March 3, 1980. The letter stated: "[T]he Board is of the opinion that except for individuals who might always represent themselves, business entities who appear before the Industrial Commission or a Referee should be represented by attorneys in good standing and admitted to practice before the Supreme Court of the State of Idaho [or by the highest court of the state in which they are admitted to practice law]." Letter from John Simko, Comm'r of the Idaho State Bar, to Will Defenbach, Indus. Comm'n (Mar. 3, 1980). The Court later referenced this letter in *Kyle v. Beco Corp.*, 109 Idaho 267, 271, 707 P.2d 378, 382 (1985), thereby formally adopting the rule that "business entities (other than individuals) must be represented by attorneys" before the Idaho Industrial Commission. The rule applies equally to the practice of law before a judicial body. *See White v. Idaho Forest Indus.*, 98 Idaho 784, 788, 572 P.2d 887, 891 (1977) (citing 2 A.L.R.3d 724 (1965)). In sum, the law in Idaho is that a business entity, such as a corporation, limited liability company, or partnership, must be represented by a licensed attorney before an administrative body or a judicial body.

Therefore, we hold the Andersens are prohibited from representing A&B Partnership and A&B LLC in a *pro se* capacity. Accordingly, we dismiss all claims the Andersens make on behalf of the partnership and the limited liability company, as these business entities have not made an appropriate appearance or argument before the Court.

7

2. The Andersens are prohibited from representing the Terry W. Andersen and Rosanna Andersen Living Revocable Trust or the Andersen Living Trust in a *pro se* capacity.

Indian Springs also argues for the first time on appeal that the Andersens are prohibited from representing the Terry W. Andersen and Rosanna Andersen Living Revocable Trust or the Andersen Living Trust in a *pro se* capacity.[7] This issue is a matter of first impression for the Court. Under Idaho law, a trust is not a separate legal entity; rather, a trust is no being at all. *State v. Cosgrove*, 36 Idaho 278, 284, 210 P. 393, 395 (1922). The trust property is owned by the trustee. "A trustee is a man who is the owner of the property and deals with it as principal, as owner and as master, subject only to an equitable obligation to account to some person to whom he stands in the relation of trustee, who are his *cestuis que trustent.*" *Id.* Thus, the only difference between an individual and a trustee owning property is that the trustee is also subject to an equitable obligation to account to the beneficiary. Since we allow individuals to represent their property interests in a *pro se* capacity, it would appear we ought to allow trustees to represent their ownership interests in property *pro se* as well. However, this conclusion is incorrect. It is fairly well-established that a trustee's duties in connection with his or her office do not include the right to present an argument *pro se* in the courts. 76 Am. Jur. 2d *Trusts* § 606 (2005); *see also C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697-98 (9th Cir. 1987); *Florida Bar v. Hughes*, 824 So.2d 154, 155-59 (Fla. 2002); *Back Acres Pure Trust et al. v. Fahnlander et al.*, 443 N.W.2d 604, 605 (Neb. 1989). Although a non-attorney may appear *pro se* on his own behalf, that privilege is personal to him. *See C.E. Pope Equity Trust*, 818 F.2d at 697. By representing the trust *pro se*, the trustee would be representing the interests of others, i.e. the beneficiaries, and would therefore be engaged in the unauthorized practice of law. 76 Am. Jur. 2d *Trusts* § 606 (2005). In the instant case, the record is devoid of evidence showing the Andersens are the beneficial owners of the claims asserted by the trusts.[8] In fact, there is no

---

[7] Again, this is Indian Springs's first opportunity to raise the issue as the Andersens did not represent the trusts in a *pro se* capacity until appeal. Therefore, we will consider Indian Springs's argument.

[8] It should be noted that in their Memorandum in support of Motion to Dismiss Non-Defaulting Parties, the Andersens asserted they have "no knowledge" of an Andersen Living Trust. However, Terry Andersen signed the real estate mortgage as trustee of the Andersen Living Trust. In addition, in their Motion for Reconsideration, Joining of Indispensible Parties, and New Trial, the Andersens asserted that the Terry W. Andersen and Rosana Andersen Living Revocable Trust" was strictly limited to the direct offspring of the Andersens as succeeding trustees and beneficiaries," and that when Andersen signed documents for said trust he signed "usually as trustee indicating he was a fiduciary acting on behalf of others."

evidence in the record verifying the existence of the trusts. Assuming the Andersens are even the trustees, they are engaging in the unauthorized practice of law in violation of I.C. § 3-410. Accordingly, we dismiss all claims the Andersens make on behalf of the Terry W. Andersen and Rosanna Andersen Living Revocable Trust and the Andersen Living Trust.

**B. The Andersens do not claim an individual ownership interest in the property.**

Next, Indian Springs argues the Andersens may not claim an individual interest in the property on appeal since the Andersens failed to challenge the district court's determination below that they have no ownership interest in the property. However, the Andersens do not argue they have an individual ownership interest in the property; rather, they argue A&B Partnership holds title to the property and that the partnership was erroneously omitted from the deeds. Therefore, Indian Springs's argument on this point is irrelevant.

**C. The Andersens' failure to challenge Indian Springs's motion for summary judgment in their individual capacities does not preclude them from appealing the district court's award of summary judgment.**

Finally, Indian Springs argues the Andersens, in their individual capacities, do not have standing to contest the district court's award of summary judgment because the Andersens failed to challenge Indian Springs's motion for summary judgment. After Indian Springs moved for summary judgment, the Andersens filed an objection to summary judgment on behalf of themselves as trustees of the Terry W. Andersen and Rosanna Andersen Living Revocable Trust and on behalf of A&B Partnership. However, after the district court awarded summary judgment, only the Andersens, in their individual capacities, filed a motion for reconsideration.

For purposes of summary judgment, the moving party bears the initial burden of proving the absence of material fact issues. *Sherer v. Pocatello School Dist. No. 25*, 143 Idaho 486, 489, 148 P.3d 1232, 1235 (2006). Only then does the burden shift to the non-moving party to come forward with sufficient evidence to create a genuine issue of material fact. *Id.* at 489-90, 148 P.3d at 1235-36. When reviewing an order for summary judgment, we apply this same standard of review. *P.O. Ventures, Inc. v. Loucks Family Family Irrevocable Trust,* 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Accordingly, a non-moving party is not precluded from appealing an order of summary judgment just because the non-moving party failed to object to the motion below. The moving party may have failed to meet its initial burden, thereby rendering summary

9

judgment inappropriate. Therefore, we hold the Andersens are not precluded from appealing the district court's award of summary judgment.

**D. The Andersens' remaining claims on appeal**

    1.  <u>The district court's award of summary judgment</u>

        a.  *Standard of Review*

When reviewing an order for summary judgment, this Court applies the same standard of review that was used by the trial court in ruling on the motion for summary judgment. *See Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(c)). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Id.*

As set forth above, the burden is on the moving party to prove there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Cafferty v. State, Dep't of Transp., Div. of Motor Vehicle Servs.*, 144 Idaho 324, 327, 160 P.3d 763, 766 (2007). This Court liberally construes all disputed facts in favor of the non-moving party, and all reasonable inferences drawn from the record will be drawn in favor of the non-moving party. *Cristo*, 144 Idaho at 307, 160 P.3d at 746. If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper. *McPheters v. Maile*, 138 Idaho 391, 394, 64 P.3d 317, 320 (2003).

        b.  *The district court did not err in quieting title to the property to Indian Springs on summary judgment.*

First, the Andersens argue the district court erred in granting summary judgment because genuine issues of material fact remain as to which party holds title to the property. The Andersens are concerned about this issue for the purpose of redemption rights. In its motion for summary judgment, Indian Springs requested the district court to quiet title to the property. The Andersens objected, arguing A&B Partnership was erroneously omitted from the original deeds and was the true title holder to the property. The district court found that when the Andersens and the Bakers admitted they did not claim an interest in the property, so did A&B Partnership. The court viewed A&B Partnership's attempt to claim an interest in the property "as an

10

unsupportable means to simply postpone the inevitable determination that neither the Andersens, Bakers, A&B nor AICO have an interest in the property." Accordingly, the district court quieted title to the property to Indian Springs.

We will not consider the Andersens' argument regarding title. The Andersens only claim A&B has an ownership interest in the property. As set forth above, the Andersens are prohibited from representing the interests of the business entities, including the partnership, in a *pro se* capacity. *See Kyle v. Beco Corp.*, 109 Idaho 267, 271, 707 P.2d 378, 382 (1985); *White v. Idaho Forest Indus.*, 98 Idaho 784, 788, 572 P.2d 887, 891 (1977). Therefore, we affirm that portion of the district court's award of summary judgment quieting title to Indian Springs.

We note, however, that the district court erred in determining A&B Partnership could not claim an ownership interest in the real property because the Andersens and the Bakers did not claim individual ownership interests in the property. The Andersens and the Bakers were deemed to have admitted that they had no individual ownership interests in the property through their failure to respond to Indian Springs's discovery requests. The partnership, however, specifically denied Indian Springs's request for admission that it did not claim an ownership interest in the real property. Although the Andersens and the Bakers were partners of A&B Partnership, their individual ownership interests in the property are separate and distinct from the partnership's interest. Nevertheless, we find that the district court's error is harmless since the Andersens may not represent the partnership *pro se*.

The Andersens attempt to save their argument that the partnership is the true title holder to the property in asserting the district court erred by refusing to join A&B LLC as an indispensible party. A&B LLC is listed on the footnote of the warranty deed.[9] The Andersens argue that because A&B LLC is the only remaining partner of Recreational Properties A&B, the limited liability company should be joined to pursue the partnership's claim to title to the property.

We review the district court's determination that A&B LLC was not an indispensible party under an abuse of discretion standard. *Utter v. Gibbins*, 137 Idaho 361, 366, 48 P.3d 1250, 1255 (2002). In considering a claim of an abuse of discretion, we apply a three-factor test that focuses upon: "(1) whether the trial court correctly perceived the issue as one of discretion; (2)

---

[9] The warranty deed is footnoted as follows: "Warranty Deed – Thornhill to Recreational Properties A&B L.L.C." This is the only place A&B LLC is listed on the warranty deed.

11

whether the trial court acted within the boundaries of its discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason." *Id.*

We hold that the district court did not abuse its discretion in finding that A&B LLC was not an indispensible party. The crux of the Andersens' argument is that A&B LLC is the remaining partner of A&B Partnership. However, the operating agreement for A&B Partnership does not list the limited liability company as a partner—only the Andersens and the Bakers. Therefore, we also affirm the district court's denial of their motion to join an indispensible party.

           c. *The district court did not err in granting summary judgment to Indian Springs on the issue of damages.*

Next, the Andersens argue the district court erred in granting summary judgment because genuine issues of material fact remain as to the principal amount owing under the promissory note. The Andersens assert Indian Springs is judicially estopped from arguing the principal amount owing is more than $188,000 based on a written statement made by D.M. Thornhill during the bankruptcy proceedings that the principal amount owing as of April 12, 2002 was only $254,000. The bankruptcy objection was signed and prepared by Lyle Eliasen, the Thornhills' attorney. The Andersens assert that if the principal amount owing under the note as of April 2002 was $254,000 and Indian Springs's records reflect that $66,000 was paid toward the note between April 2002 and June 2003, then the remaining balance on the note as of June 2003 was only $188,000. Yet, in 2006, at the time of summary judgment, Indian Springs claimed $270,637.50 was the principal amount owing under the note. As such, the Andersens assert there is a genuine issue of material fact as to the amount owing under the note.

Indian Springs, however, argues we should not consider the Andersens' claim of judicial estoppel because there is no copy of the bankruptcy objection in the record on appeal. In the Andersens' Second Response to Motion for Summary Judgment, the Andersens asserted that a copy of the bankruptcy objection was attached to Terry Andersen's affidavit, which was filed in conjunction with the Andersens' initial Response and Objection to Indian Springs's Motion for Summary Judgment. Although the bankruptcy objection is not attached to Terry Andersen's affidavit in the record on appeal, we were able to locate a copy of the document in the record. The bankruptcy objection was included in the "exhibits" submitted by the Andersens in support of their motion for reconsideration. The district court did not admit these documents into

evidence but nevertheless allowed them to be included in the record for review on appeal. It appears that the bankruptcy objection was attached to Terry Andersen's affidavit below, but that the Andersens inadvertently forgot to attach the objection when they augmented the record to include Terry Andersen's affidavit. As such, we will treat the bankruptcy objection as having been considered by the district court in ruling on summary judgment.

Indian Springs further argues the Andersens have failed to satisfy the requirements necessary for the application of judicial estoppel. "The doctrine of judicial estoppel prohibits 'a party from assuming a position in one proceeding and then taking an inconsistent position in a subsequent proceeding.'" *Riley v. W.R. Holdings, LLC*, 143 Idaho 116, 121-22, 138 P.3d 316, 321-22 (2006) (quoting *A & J Constr. Co. v. Wood,* 141 Idaho 682, 688, 116 P.3d 12, 18 (2005)). "Idaho courts may apply the doctrine even if the prior proceeding was a bankruptcy action." *Riley*, 143 Idaho at 122, 138 P.3d at 322. Generally when a litigant, through sworn statements, "obtains a judgment, advantage or consideration from one party, he will not thereafter, by repudiating such allegations and by means of inconsistent and contrary allegations or testimony, be permitted to obtain a recovery or a right against another party, arising out of the same transaction or subject matter." *Loomis v. Church*, 76 Idaho 87, 93-94, 277 P.2d 561, 565 (1954). "Because judicial estoppel is an equitable doctrine existing to protect the dignity of the judicial process it is 'invoked by a court at its discretion.'" *Riley*, 143 Idaho at 122, 138 P.3d at 322 (quoting *Sword v. Sweet,* 140 Idaho 242, 252, 92 P.3d 492, 502 (2004)).

Before addressing the issue of judicial estoppel, it is helpful to understand how Indian Springs arrived at $270,637.50 as being the principal amount owing. In its original complaint filed October 21, 2005, Indian Springs claimed the principal amount owing under the note was $248,000.[10] Indian Springs also claimed $248,000 as the principal amount owing in its motion for summary judgment. However, in its first reply to the motion for summary judgment, Indian Springs increased its request for damages, claiming $278,637.50 was the principal amount owing under the note. In support of its claim, Indian Springs attached Lyle Eliasen's affidavit, in which Eliasen verified that he had made a full review of all receipts, copies of checks received, and records to date and that $278,637.50 was the principal amount owing under the note. Indian Springs later reduced this amount to $270,637.50 based on evidence that $8,000 was paid toward

---

[10] Indian Springs also claimed $248,000 was the principal amount owing under the note in its amended complaint.

the principal balance after the action was commenced. The district court found that no genuine issue of material fact remained as to the amount owing under the note and accordingly entered damages against the Andersens for the principal amount of $270,637.50. The district court did not address the Andersens' argument for judicial estoppel.

Although the district court erred by failing to address the Andersens' argument for judicial estoppel, the error was nevertheless harmless. As set forth above, the party asserting judicial estoppel must show that the sworn statement at issue was used to obtain a judgment, advantage, or consideration from another party. *Loomis*, 76 Idaho at 93-94, 277 P.2d at 565. Here, the Andersens failed to introduce any evidence that the Thornhills, as the assignors of Indian Springs's interest, ever obtained a "judgment, advantage, or consideration" from D.M. Thornhill's statement during the bankruptcy proceeding. *See id*. Therefore, we affirm the district court's award of summary judgment as to damages.

2. The district court did not abuse its discretion in denying the Andersens' motion for reconsideration.

Next, the Andersens argue the district court erred in denying their motion for reconsideration of the court's award of summary judgment. The Andersens argue the district court overlooked evidence that the Andersens made a tender offer for $225,000 that was rejected by Indian Springs. Accordingly, the Andersens argue the district court should have decreased its award of damages to Indian Springs by $225,000 under I.C. § 28-3-603(2). The Andersens claim their tender offer is contained in their Notice of Offer to Purchase Note and Mortgage, which was filed on December 6, 2006 in conjunction with the filing of their first objection to Indian Springs's motion for summary judgment. Attached to the notice is a document entitled "Offer to Purchase Note & Mortgage," under which Ecometrix Division Meditech, Inc. agreed to purchase the Andersens' interest in the note for an undisclosed amount up to $225,000, subject to certain conditions.

"The decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court." *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001). We consider: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial

14

court reached its decision by an exercise of reason." *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 261 (2008).

Pursuant to I.C. § 28-3-603(2), "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser . . . ." "Tender" is defined by this Court as follows:

> [T]he unconditional offer of a debtor to the creditor of the amount of his debt. This means the real amount of the debt as fixed by the law, and the purpose of the law of tender is to enable the debtor to relieve himself of interest and costs and to relieve his property of encumbrance by offering his creditor all that he has any right to claim. This does not mean that the debtor must offer an amount beyond reasonable dispute, but it means the amount due,-actually due.

*Dohrman v. Tomlinson,* 88 Idaho 313, 318, 399 P.2d 255, 258 (1965) (quoting *Kelley v. Clark,* 23 Idaho 1, 12, 129 P. 921, 924 (1912)). The offer to pay must be accompanied by a present manifest ability to pay. *Pollard Oil Co. v. Christensen*, 103 Idaho 110, 116, 645 P.2d 344, 350 (1982). "[A]s a general matter a tender must be unconditioned." *Brinton v. Haight*, 125 Idaho 324, 329, 870 P.2d 677, 682 (Ct. App. 1994).

Here, the Andersens' so-called tender offer does not constitute a tender of payment under Idaho law. The Andersens never offered to pay Indian Springs the real amount of the debt. *See Dohrman*, 88 Idaho at 318, 399 P.2d at 258. Rather, the Andersens granted Equinox the exclusive right to purchase the note up to a maximum amount of $225,000. Furthermore, the offer was not unconditional. *See Brinton*, 125 Idaho at 329, 870 P.2d at 682. Equinox only agreed to pay up to $225,000 for the note if certain conditions were met, including, but not limited to: (1) a court determination as to the final amount due and owing, (2) a release of security on the portion of the property known as "house property," (3) a stipulation between the parties or a court ruling that the note and mortgage are a valid lien on the property and the house property, and (4) a stipulation between the parties or a court ruling that the release provisions in the sales agreement are valid. Thus, we affirm the district court's denial of the Andersens' motion for reconsideration.

### 3. The district court did not abuse its discretion in denying the Andersens' motion to amend the pleadings to add a counterclaim for damages.

The Andersens also argue the district court erred in denying their post-summary judgment motion to amend the pleadings to add a counterclaim for damages against the

Thornhills and Indian Springs in the amount of $870,000.[11]  In support of their motion, the Andersens argued that D.M. Thornhill failed to disclose certain problems relating to the property before the parties entered into the sales agreement, causing the Andersens to incur $690,000 in expenses.  The Andersens also argued that D.M. Thornhill fraudulently converted $180,000 in personal property.  The district court denied the Andersens' motion, finding it to be without merit, irrelevant, and untimely.

Idaho Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be freely given when justice so requires.  "A trial court's decision to deny a motion to amend a pleading is reviewed by this Court under an abuse of discretion standard."  *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 881, 42 P.3d 672, 674 (2002).  To determine whether the trial court abused its discretion, we look at: "(1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason."  *Id.*

Although the Andersens challenge the district court's denial of their motion on the basis that it was meritless and irrelevant, the Andersens have not challenged the court's alternative basis for denying the motion as being untimely.  In *Andersen v. Professional Escrow Services, Inc.*, 141 Idaho 743, 118 P.3d 75 (2005), a prior appeal involving the Andersens, we held: "When a decision is 'based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.'" 141 Idaho at 746, 118 P.3d at 78 (quoting *MacLeod v. Reed*, 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App. 1995)).  Here, we find that the district court's decision to deny the Andersens' motion to add a counterclaim may be sustained on the ground of untimeliness. The only reason the Andersens provide for waiting to add a counterclaim is that they thought title was the more important issue until after the court's entry of summary judgment.  The motion was not based on newly discovered evidence, but rather on facts known to the Andersens even before the action was commenced.  Furthermore, the district court determined that the Andersens' motion to amend their complaint was "simply an additional attempt by [the Andersens] to

---

[11] On appeal, the Andersens argue that because their proposed counterclaim for damages ($870,000) exceeded Indian Springs's claim for damages ($326,850.53), the court was precluded from entering summary judgment.  The Andersens do not cite to case law in support of this proposition.

circumvent the summary judgment decision previously entered by the [district court]." This Court has held that if a trial court finds bad faith or a dilatory motive on the part of the movant, leave to amend the pleadings should not be granted. *Smith v. Great Basin Grain Co.*, 98 Idaho 266, 272, 561 P.2d 1299, 1305 (1977). Therefore, we affirm the district court's denial of the Andersens' motion to amend the pleadings to add a counterclaim for damages.

4. The Andersens failed to provide an adequate record to substantiate their claim that the district court erred in denying their motion to dismiss the non-defaulting parties.

The Andersens argue the district court erred in denying their post-summary judgment motion to dismiss the non-defaulting parties. A hearing on the motion was held on November 9, 2007, at which time the district court denied the motion. However, the Andersens have failed to include a copy of the hearing transcript or the district court's written ruling in the record on appeal. This Court has held that "[t]he appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal." *W. Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). In the absence of a record that is adequate to review the Andersens' claims, we will not presume error below. *See id.* Accordingly, we affirm the district court's denial of the Andersens' motion to dismiss the non-defaulting parties.

5. The Andersens also failed to provide an adequate record to substantiate their claim that the district court erred in denying their motion for title clarification, rescission of the deeds, and dismissal of the case.

Finally, the Andersens argue that the district court erred in denying their post-summary judgment motion for title clarification, rescission of the deeds, and dismissal of the case. A hearing on the motion was held on January 23, 2008, at which time the district court denied the Andersens' motion. Again, the Andersens have failed to include a copy of the hearing transcript for this Court's review. As set forth above, "[t]he appellant has the obligation to provide a sufficient record to substantiate his or her claims on appeal." *Id.* Therefore, we affirm the district court's denial of the motion.

**E. Indian Springs is entitled to costs and attorney fees on appeal.**

Indian Springs requests attorney fees on appeal pursuant to the express terms of the sales agreement,[12] promissory note, and real estate mortgage. Idaho Rule of Civil Procedure 54(e)(1) states that attorney fees may be awarded when provided by contract. Here, the promissory note states: "In case suit is instituted for the collection of this note, or any portion hereof, or in case this note, or any portion hereof be collected by an attorney, I, we, or either of us, promise to pay a reasonable sum as an attorney's fee in such suit or action or for such collection." The real estate mortgage also states that in the case of foreclosure, the mortgagees are entitled to "such sum as the court may adjudge reasonable as an attorney's fee to be allowed the plaintiff . . . ." Although Indian Springs was not a party to these contracts, the Thornhills assigned their interest in the promissory note and real estate mortgage to Indian Springs. Through this assignment, Indian Springs is entitled to attorney fees on appeal under the note and mortgage.

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's award of summary judgment in favor of Indian Springs. We also affirm the district court's denial of the Andersens' post-summary judgment motions. We award Indian Springs attorney fees on appeal pursuant to the promissory note and real estate mortgage. Costs to Indian Springs.

Chief Justice EISMANN and Justices J. JONES, HORTON and KIDWELL, Pro Tem, **CONCUR.**

---

[12] As previously indicated, we are not called upon to determine whether the provisions of the sales agreement continued in effect upon exchange of the deed and mortgage and express no opinion on the matter. Because Indian Springs is entitled to attorney fees under the promissory note and the real estate mortgage, there is no need for us to address whether Indian Springs is entitled to attorney fees under the sales agreement as well.