# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38369-2010

| | | |
|---|---|---|
| INDIAN SPRINGS L.L.C., an Idaho Limited Liability Company, | ) ) ) | Twin Falls, August 2012 Term |
| Plaintiff-Respondent, | ) ) | 2012 Opinion No. 119 |
| v. | ) ) | Filed: September 14, 2012 |
| TERRY and ROSANNA ANDERSEN, Husband and Wife, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Appellants, | ) ) | |
| and | ) ) | |
| EVERETT and MARGIE ELLS, Husband and Wife, | ) ) ) | |
| Defendants. | ) ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Power County. The Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is affirmed.

Rosanna and Terry Andersen, Pocatello, argued for themselves.

Scott J. Smith; Racine, Olson, Nye, Budge & Bailey, Chartered; Pocatello; argued for respondent.

---

EISMANN, Justice.

This is an appeal from Power County in which the appellants challenge a judgment ejecting them from real property purchased by the respondent at a mortgage foreclosure sale. The appellants' primary complaint is that the district court denied their claim for unjust enrichment under which they sought to recover damages for improvements they had made to the real property prior to the foreclosure sale. We affirm the judgment of the district court.

# I.

## Factual Background.

On July 2, 1996, Terry and Rosanna Andersen (the Andersens) and John and Julie Baker (the Bakers), contracted to purchase from D.M. and Shirley Thornhill (the Thornhills) real property known as Indian Springs Natatorium for the sum of $750,000. The buyers made a $100,000 down payment and signed a promissory note for the balance of the purchase price. The note was secured by a mortgage on the real property. Mr. Andersen, as trustee of the Andersen Living Revocable Trust (the Trust), later guaranteed the note. At closing, the property was deeded to the Bakers and to Terry Andersen as trustee of the Trust.

On September 30, 1997, AICO Recreational Properties, LLC, (AICO) and the Trust borrowed $149,720.69 from Everett and Ardis McKinney (the McKinneys) and gave them a real estate mortgage on the property to secure the debt. On January 23, 1998, the Bakers deeded their interest in the property to AICO, and on February 24, 1998, Mr. Andersen deeded the Trust's interest to AICO. On January 26, 1998, the McKinneys loaned an additional $40,000 and received another mortgage on the property as security for the loan.

In 2000, the McKinneys began making the payments owing to the Thornhills. They filed an action against AICO, the Andersens, and others to foreclose their mortgages, and on March 6, 2001, the court in that lawsuit entered a decree of foreclosure and order of sale. On March 29, 2001, AICO filed a petition under Chapter 11 of the bankruptcy code, and the petition was later converted to Chapter 7. On February 27, 2003, the real property was sold at a sheriff's sale pursuant to the McKinneys' judgment, and they were the purchasers. On May 14, 2004, the bankruptcy court ordered the real property, fixtures, and specific personal property of AICO abandoned as property of the estate. It granted possession of the real property and fixtures to the McKinneys, possession of the abandoned personal property to the Thornhills, possession of one mobile home on the property to Mrs. Andersen's parents, and possession of the other mobile home to a third party. On June 1, 2004, the McKinneys deeded the real property to Indian Springs Land Investment, LLC.

On September 27, 2005, the Thornhills assigned their promissory note and mortgage to Indian Springs, LLC, (Indian Springs), and on October 21, 2005, it filed a lawsuit to foreclose the mortgage. It named as defendants numerous parties, including the Andersens, AICO, the McKinneys, and Indian Springs Land Investment, LLC. On November 19, 2007, the district

court in that case entered a judgment, decree of foreclosure, and order of sale. The court: (a) granted Indian Springs a judgment in the total sum of $424,905.54 against the Andersens and certain other defendants; (b) decreed that the lien of Indian Springs's mortgage had priority over the liens or interests in the property of any of the named defendants; and (c) ordered the property sold to pay Indian Springs's lien. The Andersens appealed, and this Court affirmed the judgment on appeal. *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 215 P.3d 457 (2009).

On January 14, 2008, the sheriff sold the real property at public auction, and Indian Springs made the highest bid. The sheriff gave Indian Springs a certificate of sale; the real property was not thereafter redeemed; and on January 15, 2009, the sheriff issued Indian Springs a sheriff's deed.

On March 3, 2009, Indian Springs filed this action seeking to evict the Andersens and Mrs. Andersen's parents from the real property pursuant to Idaho Code section 6-310, which applies to actions for forcible entry and unlawful detainer. The Andersens, representing themselves, filed an answer and counterclaim on March 31, 2009. Mrs. Andersen's parents also filed an answer and counterclaim, but they have not appealed the judgment.

On October 8, 2009, the district court held a court trial, but at the conclusion of the trial it stated that it needed additional evidence on one issue and additional authority on two other issues. It continued the matter until November 12, 2009, for further proceedings.

On October 14, 2009, the Andersens moved to dismiss the complaint on the ground that the complaint did not state a claim under section 6-310 because that statute only applies to actions seeking possession of land that does not exceed five acres in size and the complaint was not verified as required by Idaho Code section 6-318, which states that in actions for forcible entry or unlawful detainer, "[t]he complaint and answer must be verified."

On October 19, 2009, Indian Springs filed an amended complaint for eviction under Idaho Code section 6-310, which added a verification. Two weeks later it filed a motion seeking leave to file the amended complaint. On November 6, 2009, the Andersens filed an objection to that motion, a motion to strike the amended complaint, and a request for additional time if the court rejected their objection and denied their motion to strike. On November 12, 2009, the court continued the pending matters until December 10, 2009.

3

On November 20, 2009, the Andersens amended their motion by adding that "[t]here is no allegation that the defendants are in default of the payment of rent, or that the premises is being used for unlawful delivery, production or use of a controlled substance" and that "[t]here is no allegation that a landlord-tenant relationship exists between the parties." Another issue raised by the Andersens was whether a mobile home on the property was a fixture or their personal property.

During a hearing in open court on December 10, 2009, at which the Andersens and counsel for Indian Springs were present, the district court stated that it would give the parties its thinking regarding the case. While doing so, the court stated to counsel for Indian Springs: "I have a problem with the use of 6-310 as the legal basis for proceeding with this claim, and the reason I do is because I can't—it's like fitting a round peg into a square hole. The statute itself is fraught with language which doesn't fit the situation." The court ultimately stated, "What we really have here, in my view, is a claim for what is called in the law ejectment." The court explained to the Andersens what ejectment was and told them that even if it granted their motion to dismiss, it would grant Indian Springs leave to amend its complaint to assert a claim for ejectment. After some further discussion during which the court sought to encourage the parties to reach an agreement regarding the Andersens' claim to personal property and a mobile home located on the real property, counsel for Indian Springs moved, pursuant to Rule 15(b) of the Idaho Rules of Civil Procedure, to amend its complaint to conform to the evidence by adding a claim for ejectment. After further argument, the court took that motion under advisement.

On December 15, 2009, the district court issued its memorandum decision. It granted the Andersens' motion to dismiss Indian Springs's claim based upon Idaho Code section 6-310, but it also granted Indian Springs's request to amend its complaint to assert a claim for ejectment. The court ruled that Indian Springs was entitled to a writ of ejectment and that under the evidence presented the mobile home in dispute was a fixture and therefore part of the real property purchased by Indian Springs. The court gave the Andersens 120 days to remove their personal property, but the court later extended that deadline several times at the Andersens' request, with the last deadline being December 16, 2010.

On July 8, 2010, counsel appeared for the Andersens by filing an answer to the amended complaint and counterclaims for unjust enrichment and conversion. On August 8, 2010, Indian Springs moved to dismiss the counterclaims. The motion was argued on October 13, 2010, and

4

on November 12, 2010, the court entered an order dismissing the counterclaims. It held that any claim for conversion was barred by the statute of limitations and that there was no evidence that the Andersens conferred any benefit upon Indian Springs.

There were subsequent proceedings not relevant to this appeal, and on December 9, 2010, the district court entered a judgment dismissing the Andersens' counterclaims with prejudice and granting Indian Springs's claim "for Eviction."[1] The Andersens, through counsel, filed a notice of appeal the same day. However, they have represented themselves on the appeal.

## II.

## Did the District Court Err in Dismissing the Andersens' Counterclaim for Unjust Enrichment?

The Andersens filed a counterclaim against Indian Springs for unjust enrichment. They alleged, "From 1996 up to and including 2009, the Andersens (a) made permanent improvements to the land . . . which were substantial in relation to the value of said land, and (b) otherwise cared for and maintained the premises."

"The elements of unjust enrichment are that (1) a benefit is conferred on the defendant by the plaintiff; (2) the defendant appreciates the benefit; and (3) it would be inequitable for the defendant to accept the benefit without payment of the value of the benefit." *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 398, 195 P.3d 1207, 1211 (2008). In ruling that the Andersens did not have a claim for unjust enrichment against Indian Springs, the district court stated that there was no evidence that any of the Andersens' work on the property was done while Indian Springs was in possession. The Andersens do not cite to any evidence in the record that was presented to the district court showing that they made any improvements to the real property after the foreclosure sale. However, they do argue that "the continued operation of the recreational facilities of the property" shows that they conferred a benefit on Indian Springs.

Assuming that Indian Springs, as the purchaser at the foreclosure sale, obtained a benefit from improvements to the real property previously made by the Andersens, such benefit would not support a claim for unjust enrichment. *See Smith v. Sherwood & Roberts, Spokane, Inc.*, 92 Idaho 248, 255, 441 P.2d 158, 165 (1968) ("Generally, that a mortgagee receives on foreclosure

---

[1] The district court obviously meant "for ejectment," and the Andersens have not asserted on appeal that the court granted relief under the dismissed claim for eviction.

the benefit of repairs previously done to the mortgaged property does not in itself render the mortgagee liable for the value of the repairs."). Indian Springs's mortgage was a lien on the real property, including any improvements made to the property. From the proceeds of the foreclosure sale, it was entitled to be paid its court costs, the expenses of the foreclosure sale, and the amount due that was secured by the mortgage. I.C. § 6-101(1). If there had been a bid that exceeded such sums, then the district court could order the surplus paid to the person entitled to it. I.C. § 6-102. Had that occurred, then the Andersens could have asserted that they were entitled to some or all of the surplus based upon the doctrine of unjust enrichment. We express no opinion as to whether the Andersens would have had a claim for unjust enrichment against whoever would have been entitled to the surplus. We also note that recovery for unjust enrichment is unavailable if the benefits are created incidentally by a party pursuing his own advantage. *Hettinga v. Sybrandy*, 126 Idaho 467, 471, 886 P.2d 772, 776 (1994). The Andersens' arguments indicate that any improvements they may have made to the real property were made while they were operating the business on the property for their own benefit, but that issue was not addressed below.

The Andersens also argue that Indian Springs, as assignee, should be liable for any claims that the Andersens had against the Thornhills, the assignor. The Andersens rely upon a statement in *Mountain States Financial Resources Corp. v. Agrawal*, 777 F.Supp. 1550 (W.D. Okl. 1991), wherein the court, apparently applying Oklahoma law, said, "An assignee stands in the shoes of their assignor, and acquires all of the assignor's rights and liabilities in the assignment." *Id*. at 1552. The holding of the court in that case was that an assignee of the Federal Deposit Insurance Corporation (FDIC) was entitled to the six-year statute of limitations for enforcing promissory notes that would have been available to the FDIC had it brought the lawsuit.[2] The court did not hold that the assignee became liable for any obligations of its assignor.

_____

[2] In so holding, the court stated that the defendants' argument that an assignee of the FDIC was not entitled to the benefit of the six-year statute of limitations was only based upon "their plain reading of the statute." *Mountain States*, 777 F.Supp. at 1552. The court held: "An assignee stands in the shoes of the assignor, and acquires all of the assignor's rights and liabilities in the assignment. This general principle and a strong public policy require that the FDIC's assignee acquire the six-year limitations period provided by [12 U.S.C.] § 1821(d)(14)(A)." *Id*. The court's use of "strong public policy" to create rights in the assignee not stated in the statute conflicts with the later decision of the United States Supreme Court in *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 87 (1994), which addressed another subsection of the same statute. There, the FDIC, as receiver of a failed S & L, sought to sue attorneys who had represented the S & L in connection with two real estate syndications for failing to discover

Under Idaho law, an assignee is only liable for the obligations assumed under the contract of assignment. *Klundt v. Carothers*, 96 Idaho 782, 785, 537 P.2d 62, 65 (1975). "Idaho courts will not presume an obligation from the fact of an assignment. Instead, the party asserting such a personal obligation must prove the existence of an express assumption by clear and unequivocal proof." *Chambers v. Thomas*, 123 Idaho 69, 71, 844 P.2d 698, 700 (1992). The assignment by which Indian Springs acquired its interest in the mortgage and promissory note was executed by the Thornhills and Indian Springs Natatorium, Inc. The Andersens received a copy of the assignment because it was attached to Indian Springs's amended complaint in the foreclosure action. Under the terms of the assignment, Indian Springs did not assume any obligations of any kind.[3] In fact, Indian Springs did not even sign the assignment. Therefore, the assignment did not make Indian Springs liable for any claim for unjust enrichment that the Andersens may have had, and they do not point to any provision in the assignment that they contend constituted an assumption by Indian Springs of any liabilities of the Thornhills.

---

wrongdoing by the S & L's controlling officers in connection with those transactions. Because the FDIC was asserting claims the S & L had against the attorneys, the federal district court dismissed the lawsuit because under state law the knowledge of wrongdoing by the S & L's controlling officers was imputed to it, and so it could not sue the attorneys for failing to discover information that the S & L was deemed to know. On appeal, the FDIC argued that public policy supported creating federal common law regarding the imputation of knowledge in this situation. In rejecting that argument, the Supreme Court stated:

> It is hard to avoid the conclusion that [12 U.S.C.] § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise. To create additional "federal common-law" exceptions is not to "supplement" this scheme, but to alter it.

Id. at 86-87.

[3] The wording of the assignment was as follows:

> FOR AND IN CONSIDERATION OF THREE HUNDRED AND TWENTY FIVE THOUSAND DOLLARS ($325,000.00). Donald Merritt Thornhill aka D.M. Thornhill and Shirley Thornhill, husband and wife, and Indian Springs Natatorium, Inc., an Idaho Corporation, of 3245 Thornhill Lane HG.37, American Falls, Idaho 83211, hereby grants, assigns and transfers to Indian Springs, LLC of 5530 Burnt Road, Belgrade MT 59714, that certain mortgage in the original amount of SIX HUNDRED FIFTY THOUSAND DOLLARS ($650,000.00) with final payment due June 1, 2007, dated July 2, 1996 executed by Terry W. Andersen, Trustee of Andersen Living Trust and John K. Baker and Julie A. Baker, husband and wife, which mortgage was recorded in the office of the recorder of Power County Idaho as Instrument No. 165836 on July 5, 1996 in Drawer No. 8 of the records of said county, together with the Promissory Note of even date therewith
> IN WITNESS WHEREOF the undersigned has executed this assignment at American Falls, Idaho on September 27, 2005.

The Andersens also argue that they are entitled to be compensated for their improvements to the real property pursuant to Idaho Code section 6-414, which states:

> Where an occupant of real estate has color of title thereto, and in good faith has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the owner in possession of the same after the filing of an action as hereinafter provided, until the provisions of this act have been complied with; provided said occupant may elect, after filing of the action, to exercise his right to remove such improvements if it can be done without injury otherwise to such real estate.

We need not address this issue because there is nothing in the record indicating that the Andersens raised it in the district court. Their counterclaim does not include any reference to this statute. "This Court will not consider issues raised for the first time on appeal." *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011).

The Andersens state, "Sheriff's Deed does not transfer title." Although that statement is correct, it is not clear what relevance it has in this case. Title to the real property passed to Indian Springs when it received the certificate of sale. I.C. §§ 6-107, 11-309 & 11-310. As this Court explained in *Northwestern & Pacific Hypotheekbank v. Nord*, 56 Idaho 86, 50 P.2d 4 (1935):

> When the foreclosure sale was made and respondent bid in the property for the amount of the debt and costs, and the sheriff executed and delivered a certificate of sale, title passed from defendants to plaintiff for the property in question, and the judgment was thereby paid; there no longer existed any indebtedness from defendants to plaintiff.
> The only right or property interest remaining in the mortgagor was the right to divest the purchaser of his title at any time within one year after sale by compliance with the redemption statute.
> A redemption when made is not from the mortgage lien but from the execution sale, and a deed subsequently given by the sheriff passes no additional title, but rather evidences that the purchaser's title has not been divested by redemption.

*Id*. at 91-92, 50 P.2d at 6 (citations omitted). The Andersens are familiar with our decision in *Northwestern & Pacific Hypotheekbank* because in their opening brief they quoted the third paragraph above, although they neglected to mention the prior two paragraphs.

In their answer to the amended complaint in this lawsuit, the Andersens admitted that the copy of the sheriff's deed attached to the amended complaint was "a true and correct copy of the recorded Sheriff's Deed." That deed recites that Indian Springs was the high bidder at the public

auction conducted by the Sheriff and that "said Sheriff thereupon made and issued the usual Certificate of Sale, in duplicate, in due form of law, and delivered one thereof to INDIAN SPRINGS, LLC, and caused the other to be filed and recorded in the Recorder's Office of Power County, Idaho, as Instrument No. 193222." The Andersens did not contend below that Indian Springs was not the high bidder at the sheriff's sale or that it did not receive the certificate of sale.

The Andersens assert: "Without Title Insurance, there can be no certainty that the Plaintiff/Respondent truly had the ability to foreclose. There is a possibility of several other parties who were not informed of the foreclosure and/or the opportunity to redeem the property." Again, the relevance of this statement is unclear. The Andersens were parties to the foreclosure action, and the judgment of foreclosure and order of sale were upheld on appeal. *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 147 Idaho 737, 215 P.3d 457 (2009). In their answer to the amended complaint in the present case, they admitted that "they have not redeemed the premises within one year of the sheriff's sale," and they did not contend that some other person or entity had redeemed the property.

Finally, on February 24, 2005, the Thornhills gave notice of default to various persons, including the Andersens, for nonpayment of the sums due under the promissory note and mortgage. The note and mortgage were later assigned to Indian Springs on September 29, 2005. When Indian Springs filed the foreclosure action on October 21, 2005, it relied upon that notice of default. The Andersens contend, "If the Plaintiff on one hand can claim a Notice of Default from his Assignor as a right, then how can he refuse to honor the claims of these Defendants as to the charges in the Counterclaim?" The Andersens do not cite any authority or legal argument supporting their contention, nor are we aware of any.

### III.

### Did the District Court Err in Failing to Recuse Itself?

The Andersens contend that the district judge may have had an agenda. They relate that he mediated a related case involving the McKinneys and the manager of Indian Springs, that the case involved equipment that was present on the real property, and that the Andersens intervened in that case but were dismissed from the mediation. They also point to the hearing on December 10, 2009, during which the court gave its view of the case and stated that Indian Springs's

9

appropriate cause of action was ejectment, not eviction under Idaho Code section 6-310. Finally, they assert: "On several occassions [sic], [Indian Springs's manager] refused to obey court orders which the court subsequently overlooked. It was clear from the Judge's posthearing [sic] comments, that private case-related conversation had taken place between Plaintiff/Respondent's attorney and the judge excluding other parties in the case." The Andersens do not cite any facts supporting these allegations.

The Andersens did not file a motion asking the court to disqualify itself. "In the absence of a motion for disqualification, this Court will not review that issue on appeal." *Idaho Dept. of Health & Welfare v. Doe*, 150 Idaho 563, 568, 249 P.3d 362, 367 (2011). As we explained in *Doe*, "Because the question of a recusal under I.R.C.P. 40(d)(2) is committed to the discretion of the trial judge, absent some objection at trial, there was no decision by the trial court that can be reviewed and no factual record was developed from which grounds for disqualification can be discerned." *Id.*

In their reply brief, the Andersens seek to raise additional issues on appeal, including that the district court erred in holding that the mobile home was permanently affixed to the real property and was therefore part of the real property acquired by Indian Springs when it purchased the real property at the foreclosure sale and that the district erred in dismissing their claim for conversion of personal property. "[T]his Court will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). "A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).


## IV.

### Is Indian Springs Entitled to an Award of Attorney Fees on Appeal?

Indian Springs seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves*, 138 Idaho 64, 71, 57 P.3d 775, 782 (2002). "Pro se litigants are not accorded any special consideration simply because they choose to represent themselves . . . ." *Woods v. Sanders*, 150

Idaho 53, 57, 244 P.3d 197, 201 (2010). Thus, we have awarded attorney fees on appeal pursuant to Idaho Code section 12-121 when pro se litigants have brought or pursued their appeal frivolously, unreasonably, or without foundation. *Id.* at 61, 244 P.3d at 205; *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009); and *Jenkins v. Barsalou*, 145 Idaho 202, 207-08, 177 P.3d 949, 954-55 (2008). As we stated in *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 754-55, 101 P.3d 690, 698-99 (2004), when awarding attorney fees on appeal against Jenkins, a pro se appellant, pursuant to Idaho Code section 12-121, "Jenkins's appeal consists simply of raising issues on appeal that were not presented to the trial court and asserting errors by the trial court without any reasoned argument or authority supporting such assertions." The same rationale applies here. We award Indian Springs attorney fees on appeal pursuant to Idaho Code section 12-121 because this appeal was brought without foundation. Because we award attorney fees under this statute, we do not address Indian Springs's request for an award of attorney fees under Idaho Appellate Rule 11.2.

## V.
### Conclusion.

We affirm the judgment of the district court, and we award costs, including attorney fees, to respondent.


Chief Justice BURDICK, Justices J. JONES and HORTON **CONCUR.** J. Pro Tem KIDWELL concurs in Parts 1, 2 and 3 and dissents without opinion in Part 4.